UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

URBCAMCOM/WSU I, LLC,  )
a Michigan limited liability company,  )
  )
    Plaintiff,  )
  )
V  )
  )
LEXINGTON INSURANCE COMPANY, )
a foreign insurance corp.  )
  )
    Defendant  )

Case No: 2:12-cv-15686-GCS-MAR
Hon: George Caram Steeh

/

MICHAEL H. FABIAN (P29024)
FABIAN, SKLAR & KING, P.C.
Attorneys for Plaintiffs
33450 W. Twelve Mile Rd.
Farmington Hills, MI 48331
(248) 553-2000
mfabian@fabiansklar.com

PETER E. KANARIS
CHERYL L. MONDI
FISHER KANARIS, P.C.
Attorneys for Defendant
200 South Wacker Drive, 22nd Flr
Chicago, IL 60606
(312) 474-1400
pkanaris@fisherkanaris.com
cmondi@fisherkanaris.com

DANIEL J. SEYMOUR (P38908)
NAGL, BAXTER & SEYMOUR, P.C.
155 West Congress, Ste. 300
Detroit, MI 48226
(313) 964-2040
dseymour@nbslawyer.com

/

**PLAINTIFF'S MOTION TO COMPEL THE DUCES TECUM DEPOSITION OF
DEFENDANT LEXINGTON INSURANCE COMPANY'S DESIGNEE, FOR
PRODUCTION OF DOCUMENTS, AND ASSESSMENT OF SANCTIONS**

Plaintiff, by counsel, Michael H. Fabian, pursuant to Fed.R.Civ.P. 26, 30(b)(6), 34, and 37, moves to compel Defendant Lexington Insurance Company ("Lexington") to produce its designee for deposition under Rule 30(b)(6) at the offices of Plaintiff's counsel; to compel Lexington to produce documents requested in Plaintiff's first request for

production of documents; and for assessment of sanctions under Rule 37, stating in support:

1.    On January 16, 2012, Plaintiff's apartment building at 4830 Cass Avenue in Detroit sustained severe water damage.  (Complaint, ¶ 7 – Exhibit A).  The damage caused the apartments to be uninhabitable.  (Id.).  In addition to the extensive building damage, Plaintiff suffered other losses including business income and other expenses. (Id.).

2.    Lexington insured the apartment building under a commercial property insurance policy that was in effect at the time of the loss.  (Complaint, ¶¶ 4-7 – Exhibit A).

3.    Plaintiff timely notified Lexington of the loss and its claim under the policy. (Complaint, ¶ 8 – Exhibit A).

4.    On March 14, 2012, Plaintiff submitted a timely sworn statement in proof of loss documenting the replacement cost and actual cash value of its losses.  (Complaint, ¶ 9 – Exhibit A).

5.    Plaintiff and Lexington could not agree on the amount of the loss for Plaintiff's building damage claim.  (Complaint, ¶¶ 10-11 – Exhibit A).  Accordingly, the parties submitted the building damage claim to binding appraisal under Mich. Comp. Laws § 500.2833(1)(m).  (Id., ¶ 11).  The appraisers issued an award establishing the replacement cost and actual cash value of Plaintiff's building damage claim.  (Id., ¶ 13).

6.    Subsequently, Plaintiff and Lexington could not agree on the amount of loss for Plaintiff's business income claim.  (Complaint, ¶ 16 – Exhibit A).  On November 27, 2012, Plaintiff demanded binding appraisal of the lost business income claim.  (Id., ¶ 17).

Lexington refused to agree to appraisal, arguing that "coverage issues" over the amount of lost business income precluded statutory appraisal.  (Id., ¶¶ 19-20).

7.     Lexington's refusal to submit to mandatory appraisal under Mich. Comp. Laws § 500.2833(1)(m) forced Plaintiff, on December 28, 2012, to file suit against Lexington in this Court.  (Complaint – Exhibit A).  Plaintiff's complaint alleges that, by refusing to submit to appraisal and refusing to pay the full amount owing on the lost business income claim, Lexington breached the insurance policy and owes penalty interest under Mich. Comp. Laws § 500.2006.  (Id., pgs. 8-9).

8.     On February 1, 2013, Plaintiff sent Lexington a notice of taking the duces tecum deposition of its designee under Fed.R.Civ.P. 30(b)(6).  (2/1/13 letter and notice – Exhibit B).  This notice scheduled the deposition of Lexington's designee for March 11, 2013 at Plaintiff's counsel's office.  (Id., notice, pgs. 1-2).

9.     On February 1, 2013, Plaintiff also sent Lexington its first request for production of documents.  (Request for Production – Exhibit C).  In it, Plaintiff requested production of the following documents that are directly relevant to this case:  the claims file; the investigation files; the underwriting files; all other documents relating to Plaintiff; all documents upon which Lexington bases its defense in this matter; all documents Lexington may present at trial; all documents that relate to this case; and all documents, publications, etc. relating to or allegedly supporting Lexington's arguments in opposition to appraisal of the lost business income claim.  (Id.).

10.     On March 4, 2013, Lexington submitted its "response and objections" to Plaintiff's first request for production of documents.  (Lexington response – Exhibit D).  In this "response," Lexington failed to produce a single document.  Instead, Lexington

3

objected to each request as "protected from disclosure by the attorney-client privilege and/or the work product doctrine." (Id., answers A-K). With regard to documents relating to Plaintiff and this claim, Lexington promised to "produce the non-privileged portions of all documents . . . at a mutually agreeable date and time." (Id.). With regard to the documents/publications purportedly supporting Lexington's defenses, Lexington asserted that it does not have any "non-privileged" documents in its possession relating to these requests. (Id., answers H-K).

11.     Moreover, in response to Plaintiff's February 1, 2013 notice for the deposition of Lexington's designee, Lexington's attorneys claimed that the designee was not available for deposition until May and, despite the fact that Lexington issued this policy in Michigan to insure a Detroit apartment building, that Lexington would only produce the designee for deposition in Boston. (Fabian 4/1/13 letter – Exhibit E).

12.     This Court held a status conference on March 5, 2013. At this conference, the Court instructed Lexington to produce its designee for deposition no later than the first week of April, 2013. (Fabian 4/1/13 letter – Exhibit E).

13.     On March 21, 2013, Plaintiff sent Lexington a re-notice for the duces tecum deposition of its designee under Rule 30(b)(6). (3/21/13 letter and re-notice – Exhibit F). Based on this Court's instructions at the status conference, Plaintiff rescheduled the designee's deposition for April 5, 2013 at its counsel's office. (Re-notice, pg. 2). <u>This was Plaintiff's second request for the deposition of Lexington's designee</u>.

14.     On April 1, 2013, Plaintiff's counsel wrote to defense counsel indicating that Lexington had not yet produced any documents requested in the February 1, 2013 first request for production and has not produced its designee for a Rule 30(b)(6) deposition.

(Fabian 4/1/13 letter – Exhibit E).  Plaintiff's counsel closed, asking Lexington's attorney to "please contact me about the above without further delay or I will (have) no alternative but to contact the Judge's case manager and possibly file a Motion to Compel with the Court and seek the appropriate sanctions." (Id.).  This was Plaintiff's third request for the deposition of Lexington's designee.

15.     Later in the day on April 1, 2013, Lexington's attorney emailed Plaintiff's counsel, stating that Lexington's designee would be unavailable for deposition through April.  (Fabian 5/17/13 letter – Exhibit G).

16.     On April 19, 2013, counsel for the parties conducted a phone conference. (Fabian 4/19/13 letter – Exhibit H).  Plaintiff's counsel provided Lexington's attorney six dates for the Rule 30(b)(6) deposition of Lexington's representative to take place in Plaintiff's counsel's office.  (Id.).  This was Plaintiff's fourth request for the deposition of Lexington's designee.  Plaintiff's counsel also asked Lexington's attorney to produce the documents requested on February 1, 2013 during the following week.  (Id.).

17.     Despite this April 19, 2013 phone conference, during which Plaintiff's counsel offered six possible dates to depose Lexington's designee, Lexington's attorney failed to provide any dates when the designee would be available.  (Fabian 5/17/13 letter – Exhibit G).

18.     Plaintiff's counsel again wrote Lexington's attorney on May 17, 2013. (Fabian 5/17/13 letter – Exhibit G).  Plaintiff's counsel summarized Lexington's long-standing failure to produce its designee for a Rule 30(b)(6) deposition, and failure to even respond to the six alternate dates Plaintiff provided during the April 19, 2013 phone conference.  (Id.).  Plaintiff's counsel asked Lexington's attorney to "[p]lease provide to

me the dates upon which your client is available for the (Rule 30(b)(6)) deposition so we can move forward with this important discovery." (Id.). This was Plaintiff's fifth request for the deposition of Lexington's designee.

19. Once again, Lexington's attorney did not respond to Plaintiff's counsel's request for dates to conduct the Rule 30(b)(6) designee deposition. (Fabian 6/14/13 letter – Exhibit I). On June 14, 2013, Plaintiff's counsel again wrote Lexington's attorney, stating that, despite the fact that Plaintiff first noticed the designee's deposition more than four months earlier, and despite Lexington's attorney's "repeated promises . . . to provide dates for that deposition, (he has) not received any dates whatsoever from (defense counsel) whereby you will be producing Lexington's representative for deposition." (Id.). Plaintiff's counsel again asked for deposition dates, and closed by indicating that "[i]f I do not hear from you, I will be left with no alternative but to file a Motion to Compel Discovery and seek the appropriate sanctions." (Id.). This was Plaintiff's sixth request for the Rule 30(b)(6) deposition of Lexington's designee.

20. Despite Plaintiff's six requests, despite the Court's instruction at the March 5, 2013 status conference, and despite Lexington's attorney's repeated promises, Lexington still has not produced its designee for a foundational Rule 30(b)(6) deposition and refuses to even submit dates for that deposition.

21. In a follow-up response to Plaintiff's first request for production of documents, Lexington submitted a four-page "redaction log." (Redaction log – Exhibit J). In this "log," Lexington indicated that it was redacting and withholding 22 documents from the claim and investigation files. (Id.). These included claim summaries and all of Lexington's adjusters' reports. (Id.). Lexington asserted that each redacted document "is

6

protected from disclosure as proprietary, confidential and irrelevant (reinsurance or reserve) information." (Id.).

22. In his June 14, 2013 letter, Plaintiff's counsel notified Lexington's attorney that none of the documents Lexington has withheld "falls within any privilege that would protect it from discovery." (Fabian 6/14/13 letter – Exhibit I). Plaintiff's counsel requested that Lexington immediately produce "the requested claim summaries, reports and other information listed in (the) Redaction Log." (Id.).

23. Despite Plaintiff's counsel's letter, Lexington has not produced any of the redacted documents or demonstrated how they are protected from discovery.

24. Accordingly, Plaintiff must now move to compel Lexington to produce its designee for a Rule 30(b)(6) duces tecum deposition at Plaintiff's counsel's office. Plaintiff has a right to take this deposition under Rule 30(b)(6). Lexington has no meritorious grounds to preclude this deposition, or to explain why it has stonewalled production of its designee for months. Moreover, since Lexington issued the insurance policy covering this building in Detroit, and since both Plaintiff's counsel and Lexington's co-counsel are located in southeast Michigan, Lexington's designee should be deposed here. Lexington's contention that Plaintiff, who entered into the insurance contract and paid the premium in Detroit, must incur the expense of paying its lawyer to travel to Boston to depose the designee, is untenable.

25. Plaintiff must also now move to compel Lexington to produce all of the documents listed in its "redaction log." (Redaction log – Exhibit J). Each of these documents fall well within the scope of relevant discovery under Rule 26. In turn, none of the documents are protected by any recognized privilege. Lexington does not even

claim any privilege – it merely titles the summary of withheld documents as a "redaction log," not a "privilege log."[1]   (Redaction log – Exhibit J).

26.   Plaintiff also moves for assessment of sanctions under Fed.R.Civ.P. 37(a)(5)(A).

27.   As demonstrated above, Plaintiff's counsel has made repeated efforts to resolve these issues and seek concurrence with Lexington's attorney pursuant to Local Rule 37.1, however, Defendant's counsel has not responded to Plaintiff's efforts.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court grant this motion in the following particulars:

a.   Order Lexington to promptly produce its designee for a Rule 30(b)(6) duces tecum deposition pursuant to Plaintiff's deposition notice at the offices of Plaintiff's counsel at a specific time and date set forth by Plaintiff;

b.   Order Lexington to produce within 7 days all of the documents listed in its "redaction log";

c.   And, pursuant to Fed.R.Civ.P. 37(a)(5)(A), order Lexington to pay Plaintiff's costs and attorney fees wrongfully incurred in having to file this motion.

Respectfully submitted,

/s/Michael H. Fabian
MICHAEL H. FABIAN (P29024)
FABIAN, SKLAR & KING, P.C.
Attorneys for Plaintiffs
33450 W. 12 Mile Road
Farmington Hills, Michigan 48331
(248) 553-2000
mfabian@fabiansklar.com

Dated:  July 10, 2013

---

[1] This contrasts with Lexington's separate "privilege log" summarizing the documents it claims are protected by the attorney client privilege.  (Privilege log – Exhibit K).  Plaintiff does not move to compel production of these documents.

8

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL THE DUCES TECUM DEPOSITION OF DEFENDANT LEXINGTON INSURANCE COMPANY'S DESIGNEE, FOR PRODUCTION OF <u>DOCUMENTS, AND ASSESSMENT OF SANCTIONS</u>**

I. **PLAINTIFF HAS THE RIGHT TO DEPOSE LEXINGTON'S DESIGNEE UNDER RULE 30(b)(6). THE DEPOSITION SHOULD TAKE PLACE AT PLAINTIFF'S COUNSEL'S OFFICE.**

Fed.R.Civ.P. 37(a)(1) states, in relevant part: "On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery . . ." Plaintiff has been requesting the deposition of Lexington's corporate designee for over five months. Plaintiff has requested this deposition no less than six times. Even more, at the March 5, 2013 status conference, this Court instructed Lexington to produce its designee for deposition during the first week of April, 2013. Notwithstanding, Lexington's attorney has ignored Plaintiff's requests, ignored this Court's instruction, and repeatedly broken promises to provide dates and produce the designee.

Fed.R.Civ.P. 30(b)(6) authorizes a party to notice up the deposition of a corporate opponent through a designated representative. Plaintiff's original and second deposition notice specified the specific factual issues to be addressed at the deposition and the documents to be produced. (2/1/13 notice – Exhibit B; 3/21/13 re-notice – Exhibit F).

Lexington has never proffered, and has no explanation for refusing to produce its designee for a Rule 30(b)(6) deposition. As indicated in his April 1, 2013 letter, Plaintiff still does not know the complete basis for why Lexington refuses to submit the lost business income claim to mandatory appraisal under Mich. Comp. Laws § 500.2833(1)(m). (Fabian 4/1/13 letter – Exhibit E). Lexington's obstructions have significantly prejudiced Plaintiff's ability to prosecute this case.

9

Apparently Lexington's only "objection" was that the Rule 30(b)(6) deposition should take place at its corporate headquarters in Boston, Massachusetts, instead of in the Eastern District of Michigan.  This position is unavailing.

It is well established that "[a] party may unilaterally choose the place for deposing an opposing party, subject to the granting of a protective order by the Court pursuant to Rule 26(c)(2), designating a different place." *Turner v. Prudential Ins. Co. of America,* 119 F.R.D. 381, 382 (M.D.N.C.1988).  "[A] number of factors serve to dissipate the presumption [that a corporate party's deposition should be held at its principal place of business] and may persuade the Court to require the deposition to be conducted in the forum district or some other place." *Turner,* 119 F.R.D. at 383; *Rapoca Energy Co., L.P. v. AMCI Export Corp.,* 199 F.R.D. 191, 193 (W.D.Va.2001).  "These factors include location of counsel for the parties in the forum district, the number of corporate representatives a party is seeking to depose, the likelihood of significant discovery disputes arising which would necessitate-resolution by the forum court; whether the persons sought to be deposed often engage in travel for business purposes; and the equities with regard to the nature of the claim and the parties' relationship." *Armsey v. Medshares Mgmt. Servs.,* 184 F.R.D. 569, 571 (W.D.Va.1998); *Resolution Trust Corp. v. Worldwide Ins. Management Corp.,* 147 F.R.D. 125, 127 (N.D.Tex.1992).  Accordingly, "[c]orporate defendants are frequently deposed in places other than the location of the principal place of business, especially in the forum [where the action is pending], for the convenience of all parties and in the general interests of judicial economy." *Sugarhill Records Ltd. v. Motown Record Corp.,* 105 F.R.D. 166, 171 (S.D.N.Y.1985); *Custom Form Mfg., Inc. v. Omron Corp.,* 196 F.R.D. 333, 338 (N.D.Ind.2000); *see also Leist v.*

*Union Oil Co. of California,* 82 F.R.D. 203, 204 (E.D.Wis.1979) ( "[It] is proper to consider the financial position of the deponent and that of the corporate party for which he works in designating the place for his deposition."); *Baker v. Standard Indus., Inc.,* 55 F.R.D. 178, 179 (D.P.R.1972) (denying defendant corporation's motion for a protective order to require corporate officer's deposition at corporation's principal place of business because no showing corporate officer is "being put to unnecessary trouble and expense by being required to travel a great distance to give his deposition").

The equities overwhelmingly establish that the deposition of Lexington's designee must be taken in Michigan.  In its answer to Plaintiff's complaint, Lexington admitted that "it is licensed to do business in the state of Michigan." (Answer, ¶ 2 – Exhibit L).  Lexington also concedes that it issued the policy that covers Plaintiff's apartment complex on Cass Avenue in Detroit.  (Id., ¶ 4).

All of the operative facts took place in Michigan.  Lexington held itself out as a Michigan insurance company and tendered the offer of insurance in Michigan.  Plaintiff accepted and entered into the insurance contract in Michigan.  The insured building is located in Michigan.  The loss occurred in Michigan.  Inspections occurred in Michigan.  Plaintiff filed suit in the Eastern District of Michigan.  Plaintiff's counsel is located in southeast Michigan.  Lexington hired local counsel in Detroit, Michigan.

Given these compelling facts, Lexington's contention that Plaintiff, who purchased the insurance policy in Michigan and who has not received full payment or even the agreement to appraise its business income loss, must incur the expense of paying its lawyer to travel to Boston merely to discover the bases of Lexington's defenses, is patently unreasonable.

Plaintiff's motion to compel the duces tecum Rule 30(b)(6) deposition of Lexington's designee must be granted.  The deposition should take place at Plaintiff's counsel's office.

**II.  LEXINGTON VIOLATED RULES 26 AND 34 BY REFUSING TO PRODUCE RELEVANT DOCUMENTS FROM THE CLAIM AND INVESTIGATION FILES THAT ARE UNQUESTIONABLY NOT PROTECTED BY ANY PRIVILEGE.**

Lexington's refusal to produce the documents listed in its so-called "redaction log" is frivolous.  Fed.R.Civ.P. 26(b)(1) grants parties the right to "obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense . . ." Fed.R.Civ.P. 34 permits a party to serve requests for production of documents on the opposing party. As indicated above, Rule 37(a)(1) authorizes a motion to compel discovery.

Where a party resists discovery on the basis of privilege, "[t]he withholding party bears the burden of proving the materials are privileged or protected from discovery." *Cunningham v. Smithkline Beecham,* 255 F.R.D. 474, 480 (N.D.Ind.2009); *The Navajo Nation v. Peabody Holding Co., Inc.,* 255 F.R.D. 37, 46 (D.D.C.2009); *In re Commercial Money Center, Inc., Equipment Lease Litig.,* 248 F.R.D. 532, 539 (N.D.Ohio2008). Lexington has not remotely met its burden of proving that the documents in its "redaction log" are privileged or protected from discovery.

At the outset, Lexington does not even refer to its list of withheld documents as a "privilege log."  Instead, it euphemistically titles the list as a "redaction log."  (Redaction log – Exhibit J).

The three grounds Lexington lists for withholding the documents – "proprietary, confidential and irrelevant" – are untenable.  (Redaction log – Exhibit J).  To begin, these documents are clearly relevant discovery requests.  Relevance for discovery purposes is

12

extremely broad. *Lewis v. ACB Business Services, Inc.,* 135 F.3d 389, 402 (6th Cir.1998). By Lexington's own "description," each withheld document relates to Plaintiff's claim and/or the investigation of Plaintiff's claim. (Redaction log – Exhibit J). They directly relate to this case and, therefore, fall well within the broad scope of relevant discovery.

Lexington's vague allegation that the documents are "confidential" is insufficient. A party may not refuse disclosure based solely on the self-serving description that a document is "confidential." See, e.g., *Scheurer Hosp. v. Lancaster Pollard & Co.,* 2012 WL 5471135, *4 (E.D.Mich. No. 12–cv–11536, Nov. 9, 2012) (holding that a settlement agreement is not protected simply because it is designated as "confidential"); see also *Mafcote, Inc. v. Federal Ins. Co.,* 2010 WL 1929900, *4 (W.D.Ky. No. 3:08–CV–11–S, May 12, 2010) ("It is well settled that a concern for protecting confidentiality does not equate to privilege, and that information and documents are not shielded from discovery on the sole basis that the they are confidential.").

This leaves Lexington's claim that the "redacted" documents are "proprietary" information. Federal law is clear that "no absolute privilege exists for trade secrets or proprietary business information." *DIRECTV, Inc. v. Puccinelli,* 224 F.R.D. 677, 689–90 (D.Kan.2004) (citations omitted). Therefore, "asserting an objection to a discovery request that the [information] sought contain trade secrets or proprietary information does not shield the documents from discovery." *Id.*

In addition, the party claiming that documents are "proprietary" and must be shielded from discovery has the stringent burden of showing that disclosure will work a "clearly defined and very serious injury" to its business. *United States v. IBM,* 67 F.R.D. 40, 47 (S.D.N.Y.1975). By analogy, the Freedom of Information Act Regulations, 5 CFR

294.112(b)(1), defines "confidential commercial information" as information which "could reasonably be expected to cause substantial competitive harm."

The mere proposition that disclosure of documents from the claim and investigation file in this case would cause "very serious injury" or "substantial competitive harm" to Lexington's business is absurd. Claims files are discoverable and are <u>routinely</u> produced in actions against first-party insurers. See *Allstate Indem. Co v. Ruiz*, 899 So.2d 1121, 1126 (Fla.2005) (citations omitted); *Silva v. Fire Ins. Exchange*, 112 F.R.D. 699 (D.Mont.1986) ("a plaintiff in a first-party . . . action is entitled to discover the entire claims file kept by the insurer").

Lexington's long-standing effort to withhold production of Plaintiff's claim/investigation file unquestionably violates the Rules of Civil Procedure. Plaintiff's motion to compel production of the documents listed in Lexington's "redaction log" must be granted.

### III.    LEXINGTON MUST BE SANCTION UNDER RULE 37.

Lexington's refusal to produce its designee for a Rule 30(b)(6) deposition and produce the documents listed in its "redaction log" has been frivolous and necessitates assessment of sanctions under Fed.R.Civ.P. 37. Fed.R.Civ.P. 37(a)(5)(A) mandates that, "[i]f the motion (to compel) is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising the conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees."

14

As demonstrated above, Lexington did not have any meritorious legal basis to withhold its designee and the subject documents from discovery.  Plaintiff's counsel gave Lexington numerous opportunities to provide this discovery.  Indeed, Plaintiff requested the Rule 30(b)(6) deposition of Lexington's designee <u>six times</u>.  This Court also instructed Lexington to produce the designee by the first week of April.  Counsel repeatedly warned that failure to produce the designee and requested documents would necessitate the filing of the motion to compel and for assessment of sanctions.  (Fabian 4/1/13 letter – Exhibit E; Fabian 6/14/13 letter – Exhibit I).

None of the three exceptions to imposition of sanctions under Rule 37(a)(5)(A) exists.  Plaintiff did not file this motion "before attempting in good faith to obtain the disclosure or discovery without court action."  Rule 37(a)(5)(A)(i).  Lexington's refusal to produce discovery was not "substantially justified."  Rule 37(a)(5)(A)(ii).  No other circumstances make an award of expenses "unjust."  Rule 37(a)(5)(A)(iii).  Plaintiff's motion to compel and for assessment of Rule 37 sanctions must accordingly be granted.

Respectfully submitted,

/s/Michael H. Fabian
MICHAEL H. FABIAN (P29024)
FABIAN, SKLAR & KING, P.C.
Attorneys for Plaintiffs
33450 W. 12 Mile Road
Farmington Hills, Michigan 48331
(248) 553-2000
mfabian@fabiansklar.com

Dated:  July 10, 2013

## CERTIFICATE OF SERVICE

Michael H. Fabian certifies and affirms that on July 10, 2013 I served a copy of the foregoing paper and this Certificate of Service upon:

15

Peter Kanaris
Fisher Kanaris, P.C.
200 South Wacker Drive, 22nd Floor
Chicago, IL 60606
(312) 474-1400
pkanaris@fisherkanaris.com

Cheryl Mondi
Fisher Kanaris, P.C.
200 South Wacker Drive, 22nd Floor
Chicago, IL 60606
(312) 474-1400
cmondi@fisherkanaris.com

Daniel J. Seymour (P38908)
Nagi, Baxter & Seymour
155 West Congress, Ste. 300
Detroit, MI 48226
dseymour@nbslawyer.com

electronically via the court's CM/ECF system which will send notification of such filing to the above.

I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants:  NONE

/s/Michael H. Fabian
FABIAN, SKLAR & KING, P.C.
Attorneys for Plaintiffs
33450 W. Twelve Mile Rd.
Farmington Hills, MI 48331
(248) 553-2000
mfabian@fabiansklar.com

Date:  July 10, 2013