UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

URBCAMCOM/WSU I, LLC,                )
a Michigan limited liability company,  )
                                     )       Case No:  2:12-cv-15686-GCS-MAR
           Plaintiff,                )       Hon:  George Caram Steeh
                                     )
v                                    )
                                     )
LEXINGTON INSURANCE COMPANY,  )
a foreign insurance corp.            )
                                     )
           Defendant                 )
_____/

MICHAEL H. FABIAN (P29024)           PETER E. KANARIS
FABIAN, SKLAR & KING, P.C.           CHERYL L. MONDI
Attorneys for Plaintiffs             FISHER KANARIS, P.C.
33450 W. Twelve Mile Rd.             Attorneys for Defendant
Farmington Hills, MI 48331           200 South Wacker Drive, 22nd Flr
(248) 553-2000                       Chicago, IL 60606
mfabian@fabiansklar.com              (312) 474-1400
                                     pkanaris@fisherkanaris.com
                                     cmondi@fisherkanaris.com

                                     DANIEL J. SEYMOUR (P38908)
                                     NAGL, BAXTER & SEYMOUR, P.C.
                                     155 West Congress, Ste. 300
                                     Detroit, MI 48226
                                     (313) 964-2040
                                     dseymour@nbslawyer.com
_____/

**PLAINTIFF'S RESPONSE TO DEFENDANT LEXINGTON INSURANCE
COMPANY'S RULE 72(a) OBJECTIONS TO MAGISTRATE JUDGE
MARK A. RANDON'S AUGUST 13, 2013 ORDER GRANTING PLAINTIFF'S
<u>MOTION TO COMPEL PRODUCTION OF DOCUMENTS</u>**

Plaintiff, by counsel, Michael H. Fabian, responds to Defendant Lexington Insurance Company's ("Lexington's") Rule 72(a) objections to Magistrate Judge Randon's August 13, 2013 order granting Plaintiff's motion to compel Lexington to produce documents Lexington claims constitutes "reserve information."

## INTRODUCTION

Lexington objects under Fed.R.Civ.P. 72(a) to Magistrate Judge Randon's August 13, 2013 Order compelling production of designated documents Lexington has wrongfully withheld.  Lexington fails to support or has abandoned any argument that the documents are privileged, subject to work product, proprietary, or confidential.  Instead, Lexington exclusively argues that the documents relate to "reserve information" which is irrelevant.  As established below, most information ordered produced goes far beyond a mere designation of Lexington's "reserves."   Moreover, since Plaintiff has brought a breach of contract action and claim for penalty interest under Mich. Comp. Laws § 500.2006 against Lexington – the first-party insurer of Plaintiff's property – documents relating to Lexington's evaluation and valuation of Plaintiff's first-party claim, whether or not described as "reserve information," is directly relevant.

Lexington utterly fails to meet its burden of demonstrating, under Rule 72(a), that Magistrate Judge Randon's Order is clearly erroneous or contrary to law.  Lexington's objections constitute nothing more than the latest of a long line of attempts to deny resolution and payment of Plaintiff's claim.  The objections should be denied.

## STATEMENT OF FACTS

On January 16, 2012, Plaintiff's apartment building at 4830 Cass Avenue in Detroit sustained severe water damage.  (Complaint, Doc. #1, ¶ 7 – Exhibit A).  The

damage caused the apartments to be uninhabitable.  (Id.).  Besides the extensive building damage, Plaintiff suffered other losses including business income and other expenses.  (Id.).

Lexington insured the apartment building under a commercial property insurance policy in effect at the time of the loss.  (Complaint, ¶¶ 4-7 – Exhibit A; Lexington Answer, Doc. #6, ¶ 4 – Exhibit B).  Plaintiff timely notified Lexington of the loss and its claim under the policy.  (Complaint, ¶ 8 – Exhibit A).  On March 14, 2012, Plaintiff submitted a timely sworn statement in proof of loss documenting the replacement cost and actual cash value of its losses.  (Id., ¶ 9).

Plaintiff and Lexington could not agree on the amount of the loss for Plaintiff's building damage claim.  (Complaint, ¶¶ 10-11 – Exhibit A; Lexington Answer, ¶ 11 – Exhibit B).  Accordingly, the parties submitted the building damage claim to binding appraisal under Mich. Comp. Laws § 500.2833(1)(m).  (Complaint, ¶ 11 – Exhibit A; Lexington Answer, ¶ 11 – Exhibit B).  The appraisers issued an award establishing the replacement cost and actual cash value of Plaintiff's building damage claim.  (Complaint, ¶ 13 – Exhibit A; Lexington Answer, ¶ 13 – Exhibit B).

Subsequently, Plaintiff and Lexington could not agree on the amount of damages for Plaintiff's lost business income, extra damages and contents claims.  (Complaint, ¶¶ 16-19 – Exhibit A).  On November 27, 2012, Plaintiff demanded binding appraisal of the lost business income, extra damages and contents claims.  (Id., ¶ 17; Lexington Answer, ¶ 17 – Exhibit B).  Lexington refused to agree to appraisal, arguing that "coverage issues" precluded statutory appraisal.  (Complaint, ¶¶ 19-20 – Exhibit A; Lexington Answer, ¶¶ 19-20 – Exhibit B).

3

Lexington's refusal to submit to mandatory appraisal under Mich. Comp. Laws § 500.2833(1)(m) forced Plaintiff, on December 28, 2012, to file suit against Lexington in this Court.  (Complaint – Exhibit A).   Lexington incorrectly asserts that Plaintiff's complaint solely states a claim for declaratory relief.   (Lexington Objections, p 2). Actually, in addition to requesting a declaratory judgment regarding the period of restoration and an order compelling appraisal of the outstanding claims, Plaintiff's complaint specifically states a breach of contract action and claim for statutory penalty interest and requests entry of a judgment awarding Plaintiff (1) the amount of the appraisal award; (2) penalty interesting owing under Mich. Comp. Laws § 500.2006, and (3) "all consequential damages including attorney fees and costs."  (Complaint, ¶¶ 26-29 and Wherefore Clause).

Lexington filed its Answer to Plaintiff's Complaint and Affirmative Defenses on January 29, 2013.  (Lexington's Answer – Exhibit B).  In its Answer, Lexington alleged that one or more "coverage issues" preclude appraisal and must be resolved by the Court.  (Id, ¶¶ 18-20, 22).

Not knowing the extent of Lexington's positions and purported "coverage issues," on February 1, 2013, Plaintiff sent Lexington a notice for taking the *duces tecum* deposition of its designee under Fed.R.Civ.P. 30(b)(6).  (2/1/13 letter and notice – Exhibit C).  This notice scheduled the deposition of Lexington's designee for March 11, 2013 at Plaintiff's counsel's office.  (Id., notice, pgs. 1-2).

On February 1, 2013, Plaintiff also sent Lexington its first request for production of documents.  (Request for Production – Exhibit D).  In it, Plaintiff requested production of the following documents that are directly relevant to this case:  the claims file; the

investigation files; the underwriting files; all other documents relating to Plaintiff; all documents upon which Lexington bases its defense in this matter; all documents Lexington may present at trial; all documents that relate to this case; and all documents, publications, etc. relating to or allegedly supporting Lexington's arguments in opposition to appraisal of the lost business income claim.  (Id.).

On March 4, 2013, Lexington submitted its "response and objections" to Plaintiff's first request for production of documents.  (Lexington response – Exhibit E).  In this "response," Lexington failed to produce a single document.  Instead, Lexington objected to each request as "protected from disclosure by the attorney-client privilege and/or the work product doctrine."  (Id., answers A-K).  Regarding documents relating to Plaintiff and this claim, Lexington promised to "produce the non-privileged portions of all documents . . . at a mutually agreeable date and time."  (Id.).  Regarding the documents/publications purportedly supporting Lexington's defenses, Lexington asserted it has no "non-privileged" documents in its possession relating to these requests.  (Id., answers H-K).

Moreover, in response to Plaintiff's February 1, 2013 notice for the deposition of Lexington's designee, Lexington's attorneys claimed the designee was not available for deposition until May and, despite the fact that Lexington issued this policy in Michigan to insure a Detroit apartment building, that Lexington would only produce the designee for deposition in Boston.  (Fabian 4/1/13 letter – Exhibit F).

On March 5, 2013, this Court held a status conference.  At this conference, the Court instructed Lexington to produce its designee for deposition no later than the first week of April, 2013.  (Fabian 4/1/13 letter – Exhibit F).

On March 21, 2013, Plaintiff sent Lexington a re-notice for the duces tecum deposition of its designee under Rule 30(b)(6).  (3/21/13 letter and re-notice – Exhibit G).  Based on this Court's instructions at the status conference, Plaintiff rescheduled the designee's deposition for April 5, 2013 at its counsel's office.  (Re-notice, pg. 2).  This was Plaintiff's second request for the deposition of Lexington's designee.

On April 1, 2013, Plaintiff's counsel wrote to defense counsel indicating Lexington had not yet produced any documents requested in the February 1, 2013 first request for production and has not produced its designee for a Rule 30(b)(6) deposition.  (Fabian 4/1/13 letter – Exhibit F).  Plaintiff's counsel closed, asking Lexington's attorney to "please contact me about the above without further delay or I will (have) no alternative but to contact the Judge's case manager and possibly file a Motion to Compel with the Court and seek the appropriate sanctions."  (Id.).  This was Plaintiff's third request for the deposition of Lexington's designee.  Later in the day on April 1, 2013, Lexington's attorney emailed Plaintiff's counsel, stating Lexington's designee would be unavailable for deposition through April.  (Fabian 5/17/13 letter – Exhibit H).

On April 19, 2013, the parties' attorneys conducted a phone conference.  (Fabian 4/19/13 letter – Exhibit I).  Plaintiff's counsel provided Lexington's attorney six dates for the Rule 30(b)(6) deposition of Lexington's representative to take place in Plaintiff's counsel's office.   (Id.).   This was Plaintiff's fourth request for the deposition of Lexington's designee.  Plaintiff's counsel also asked Lexington's attorney to produce the documents requested on February 1, 2013 during the following week.  (Id.).  Despite Plaintiff's counsel's offer of six possible dates to depose Lexington's designee,

Lexington's attorney failed to provide any dates when the designee would be available. (Fabian 5/17/13 letter – Exhibit H).

Plaintiff's counsel again wrote Lexington's attorney on May 17, 2013. (Fabian 5/17/13 letter – Exhibit H). Plaintiff's counsel summarized Lexington's long-standing failure to produce its designee for a Rule 30(b)(6) deposition, and failure to even respond to the six alternate dates Plaintiff provided during the April 19, 2013 phone conference. (Id.). Plaintiff's counsel asked Lexington's attorney to "[p]lease provide to me the dates upon which your client is available for the (Rule 30(b)(6)) deposition so we can move forward with this important discovery." (Id.). <u>This was Plaintiff's fifth request for the deposition of Lexington's designee</u>.

Once again, Lexington's attorney did not respond to Plaintiff's counsel's request for dates to conduct the Rule 30(b)(6) designee deposition. (Fabian 6/14/13 letter – Exhibit J). On June 14, 2013, Plaintiff's counsel again wrote Lexington's attorney, stating that, despite the fact that Plaintiff first noticed the designee's deposition more than four months earlier, and despite Lexington's attorney's "repeated promises . . . to provide dates for that deposition, (he has) not received any dates whatsoever from (defense counsel) whereby you will be producing Lexington's representative for deposition." (Id.). Plaintiff's counsel again asked for deposition dates, and closed by indicating that "[i]f I do not hear from you, I will be left with no alternative but to file a Motion to Compel Discovery and seek the appropriate sanctions." (Id.). <u>This was Plaintiff's sixth request for the Rule 30(b)(6) deposition of Lexington's designee</u>. Once again, Lexington's attorney failed to respond or produce its designee.

In a follow-up response to Plaintiff's first request for production of documents, Lexington submitted a four-page "redaction log." (Redaction log – Exhibit K). At the outset, Lexington's "redaction log" referenced bate-stamped pages 2179-2341. (Id.). Yet, Lexington provided Plaintiff only documents up to bates page 2100. (Lexington Cover Letter and CD – Exhibit L).

Lexington indicated it was redacting and withholding 22 documents from the claim and investigation files. (Redaction Log – Exhibit K). These included claim summaries and portions of Lexington's adjusters' reports. (Id.). Lexington asserted that each redacted document "is protected from disclosure as proprietary, confidential and irrelevant (reinsurance or reserve) information." (Id.).

In particular, Lexington inexplicably redacted all damage and claim evaluation information – not merely the amount of the reserve – from the "Damages/Injury Assessment" and "Potential Exposure" sections of the claims summaries, (Executive Claim Summary, bates pgs. 1, 10 – Exhibit M), as well as the "Estimate of Loss" section of the claim report, (Redacted "Estimate of Loss" sections – Exhibit N). Additional redactions were made from emails and correspondence, which are unclear as to the content. (Redacted emails and correspondence – Exhibit O).

In his June 14, 2013 letter, Plaintiff's counsel notified Lexington's attorney that none of the documents Lexington has withheld "falls within any privilege that would protect it from discovery." (Fabian 6/14/13 letter – Exhibit J). Plaintiff's counsel requested that Lexington immediately produce "the requested claim summaries, reports and other information listed in (the) Redaction Log." (Id.).

Despite Plaintiff's counsel's June 14, 2013 letter, Lexington produced none of the redacted documents or demonstrate how they are protected from discovery.  Lexington also continued withholding its designee from the Rule 30(b)(6) deposition.

Accordingly, on July 10, 2013, Plaintiff filed a motion to compel Lexington to produce its designee for a Rule 30(b)(6) deposition and to compel Lexington to produce all of the documents listed in its "redaction log."  (Motion to Compel, Doc. # 18).  On the now pertinent issue of reserve information, Plaintiff argued that:

1.   Each of these documents fall well within the scope of relevant discovery under Rule 26.  (Id., pgs. 7-8, 12).

2.   Indeed, Lexington does not even refer to its list of withheld documents as a "privilege log."  It euphemistically titles the list as a "redaction log."  (Id., pgs. 7-8, 12, quoting Redaction log – Exhibit K).

3.   Claim files are routinely discoverable in policyholders' first-party actions against insurers.  (Id., pg. 14).

4.   The three grounds Lexington lists for withholding the documents – "proprietary, confidential and irrelevant" – are untenable.  (Id., pg. 12).  These documents are clearly relevant discovery requests.  (Id.).  By Lexington's own "description," each withheld document relates to Plaintiff's claim and/or the investigation of Plaintiff's claim.  (Id., pg. 13, citing Redaction log – Exhibit K).  They directly relate to this case and, therefore, fall well within the broad scope of relevant discovery.  (Id.).

5.   Lexington's vague allegation that the documents are "confidential" is legally untenable.  (Id., pg. 13).

6.   Finally, the documents are not "proprietary."  (Id., pgs. 13-14).  Lexington has not and cannot meet its stringent burden of showing disclosure will work a "clearly defined and very serious injury" to its business.  (Id.).

Lexington responded to Plaintiff's motion to compel on July 26, 2013.  (Response, Doc. # 21).   Addressing the "reserve" information issue, Lexington

principally argued these documents allegedly do not relate to valuation of the claim and are irrelevant to Plaintiff's claim for lost business income damages, consequential damages, and penalty interest.  (Id., pgs. 4-6).  In one sentence, Lexington asserted the reserve information is "proprietary" and "confidential," but presented no authority or legal argument supporting that position.  (Id., pg. 4).  Lexington's response also never argued that the specific nature of Plaintiff's complaint rendered reserve information irrelevant.  (Id., pgs. 4-6).  In addition, Lexington's response did not dispute Plaintiff's contention that Lexington redacted far more than simply the amount of the reserve.  Lexington never produced unredacted copies of the documents for *in camera* review by the Magistrate Judge.

Plaintiff filed a reply brief on August 2, 2013, (Reply Brief, Doc. # 22), indicating:

1.    Lexington does not dispute that claims files are routinely discoverable in actions against first-party insurers.  (Id., pg. 3).  Lexington presents no argument supporting the assertion in its "redaction log" that reserve information is "proprietary" or "confidential."  (Id., citing Redaction Log – Ex. K).  Lexington also implicitly concedes that information regarding the reserve in Plaintiff's claim is not protected by any privilege.  (Id.).  Lexington solely argues this information is "irrelevant."  (Id.).

2.    Lexington incorrectly argues that "the vast majority of jurisdictions" have established a blanket rule against disclosure of reserve information.  (Id., pgs. 3-5).  Actually, disclosure of reserve information is subject to the same discovery standard as all other material.  (Id., pg. 3).  Moreover, when a plaintiff brings a claim for first-party benefits against its own insurer, courts routinely hold reserve information is relevant to how the insurer assessed and valued the claim and is, therefore, discoverable.  (Id., pgs. 3-4).  Just as in those cases, information about the reserve is relevant, or potentially relevant, to what Lexington actually thought about the merits and value of Plaintiff's claim.  (Id.).

3.    Lexington omits that its cited cases either addressed information protected by the attorney-client/work-product privileges, which are

10

not at issue here, or cases against third-party or liability insurers. (Id., pg. 4).

4.      Finally, Lexington does not even try to explain how the extensive information redacted from documents relating to "Damages/Injury Assessment," "Potential Exposure," and the "Estimate of Loss" constitutes "reserve information" or is irrelevant to valuation of Plaintiff's claim.  (Id., pgs. 4-5).

Plaintiff's motion to compel came up for hearing before Magistrate Judge Mark A. Randon on August 13, 2013.  (8/13/13 Order, Doc. # 23).  After hearing arguments, Magistrate Judge Randon granted Plaintiff's motion to compel the Rule 30(b)(6) deposition of Lexington's designee at the offices of Plaintiff's counsel in Michigan "within 30 days."  (Id.).  He also granted Plaintiff's motion to compel documents, in the following particulars:

> Once a protective order is filed, Defendant must provide Plaintiff an unredacted copy of: (1) the Executive Claim Summary (the "ReInsurance" sections shall remain redacted) (Dkt. No. 22, Ex. 3); (2) the Estimate of Loss (Dkt. No. 22, Ex. 4); and, (3) e-mails from April and May of 2012 (Dkt. No. 22, Ex. 5).

> By *August 27, 2013*, Defendant must either produce the documents beyond bates page 2100 (if such documents exist), or provide a written explanation why the "redaction log" references bates-stamped pages 2179-2341, but Defendant only provided documents up to bates page 2100.  (Id.).

Pursuant to Magistrate Judge Randon's Order, on August 16, 2013, Plaintiff's counsel wrote to Lexington's attorney, enclosing a proposed document-production protective order and giving seven proposed dates, within the mandatory 30-day window, for the Rule 30(b)(6) deposition of Lexington's designee.  (Fabian 8/16/13 letter & proposed protective order – Exhibit P).  Although Lexington must produce its designee for deposition by September 12, 2013 – 30 days after Magistrate Judge Randon's Order – Lexington has inexplicably ignored Plaintiff's counsel's letter.

11

On August 26, 2013, the last permissible day, Lexington filed Rule 72(a) objections to Magistrate Judge Randon's August 13, 2013 Order. Lexington objects only to the ruling requiring production of documents it continues to characterize as "reserve information."[1] While Lexington has not objected to Magistrate Judge Randon's Order compelling the Rule 30(b)(6) deposition by September 12, 2013, it apparently has no intention of complying. Plaintiff will apparently have to file yet another motion.

In the meantime, Plaintiff now responds to Lexington's Rule 72(a) objections. For the reasons presented, Lexington's objections should be denied.

## ARGUMENT

### LEXINGTON HAS FAILED TO MEET ITS BURDEN OF ESTABLISHING THAT MAGISTRATE JUDGE RANDON ORDER REQUING IT TO PRODUCE THE DESIGNATED DOCUMENTS WAS CLEARLY ERRONEOUS OR CONTRARY TO LAW.

Lexington has not demonstrated that Magistrate Judge Randon clearly erred or violated the law in compelling production of the documents listed in the August 13, 2013 Order. Lexington's objections should be denied.

Fed.R.Civ.P. 26(b)(1) grants parties the right to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . ." Fed.R.Civ.P. 34 permits a party to serve requests for production of documents on the opposing party. Where a party resists discovery on the basis of privilege, "[t]he withholding party bears the burden of proving the materials are privileged or protected from discovery." *Cunningham v. Smithkline Beecham,* 255 F.R.D. 474, 480 (N.D.Ind.2009); *The Navajo*

---

[1] Lexington has not objected to the Magistrate Judge's ruling compelling the Rule 30(b)(6) deposition of its designee or production of documents beyond bates page 2100."

*Nation v. Peabody Holding Co., Inc.,* 255 F.R.D. 37, 46 (D.D.C.2009); *In re Commercial Money Center, Inc., Equipment Lease Litig.,* 248 F.R.D. 532, 539 (N.D.Ohio2008).

A.   **The "Executive Claim Summary" and "Estimate of Loss" documents Magistrate Judge Randon ordered produced, with reinsurance information redacted, address Lexington's evaluation of Plaintiff's claim and valuation of the loss and are not reserve information.**

At the outset, Lexington's Rule 72 objections fail to even acknowledge that the "Executive Claim Summary," (Exhibit M), and "Estimate of Loss," (Exhibit N), documents ordered produced are not limited to a mere statement of the reserve, but set forth, at length, Lexington's evaluation of the claim and valuation of the loss.  Lexington has never explained, either before the Magistrate Judge or in its current objections, how the information in these specific documents is irrelevant and not discoverable.  Lexington did not even produce unredacted copies of the documents for Magistrate Judge Randon's *in camera* inspection.   These documents directly address Lexington's positions regarding coverage of, and the value of, Plaintiff's claim.   The Magistrate Judge correctly held they are relevant and discoverable.

Lexington has also never disputed that claims files are discoverable and are routinely produced in actions against first-party insurers.  See *Allstate Indem. Co v. Ruiz*, 899 So.2d 1121, 1126 (Fla.2005) (citations omitted); *Silva v. Fire Ins. Exchange*, 112 F.R.D. 699 (D.Mont.1986) ("a plaintiff in a first-party . . . action is entitled to discover the entire claims file kept by the insurer").  As in any other case, Plaintiff has the right to discover the opposing party's positions on liability and damages.

Magistrate Judge Randon did not clearly err or violate the law in ordering production of these documents.  This Court should deny Lexington's objections.

13

**B.** **Lexington does not dispute that these documents are not privileged. Lexington also has failed to support and abandoned its claim that the documents are "proprietary" and "confidential."**

Even if all of the subject documents exclusively addressed "reserve information," Lexington has not remotely met its burden of proving that they are privileged or protected from discovery. Indeed, Lexington did not even refer to its list of withheld "reserve information" documents as a "privilege log." Instead, it euphemistically titled the list as a "redaction log." (Redaction log – Exhibit K). Lexington's July 26, 2013 response to Plaintiff's motion to compel also never even tried to argue these documents were protected by a privilege or the work produce doctrine. (Response, Doc. # 21).

The three grounds Lexington listed for withholding the documents – "proprietary, confidential and irrelevant" – were untenable. (Redaction log – Exhibit K). While Lexington's July 26, 2013 response summarily asserted, in one sentence, its so-called "reserve information" was "proprietary" and "confidential," (Response, Doc. # 21, pg. 4), Lexington failed to present any argument or a single authority supporting this proposition.

Lexington also never disputed the argument in Plaintiff's motion to compel that these documents are neither "proprietary" nor "confidential." A party may not refuse disclosure based solely on the self-serving description that a document is "confidential." See, e.g., *Scheurer Hosp. v. Lancaster Pollard & Co.*, 2012 WL 5471135, *4 (E.D.Mich. No. 12–cv–11536, Nov. 9, 2012) (holding a settlement agreement is not protected simply because it is designated as "confidential"); see also *Mafcote, Inc. v. Federal Ins. Co.,* 2010 WL 1929900, *4 (W.D.Ky. No. 3:08–CV–11–S, May 12, 2010) ("It is well settled that a concern for protecting confidentiality does not equate to privilege, and that

14

information and documents are not shielded from discovery on the sole basis that the they are confidential.").

In addition, federal law is clear that "no absolute privilege exists for trade secrets or proprietary business information." *DIRECTV, Inc. v. Puccinelli,* 224 F.R.D. 677, 689–90 (D.Kan.2004) (citations omitted).  Therefore, "asserting an objection to a discovery request that the [information] sought contain trade secrets or proprietary information does not shield the documents from discovery." *Id.*

Instead, the party claiming that documents are "proprietary" and must be shielded from discovery has the stringent burden of showing disclosure will work a "clearly defined and very serious injury" to its business. *United States v. IBM*, 67 F.R.D. 40, 47 (S.D.N.Y.1975).  By analogy, the Freedom of Information Act Regulations, 5 CFR 294.112(b)(1), defines "confidential commercial information" as information which "could reasonably be expected to cause substantial competitive harm."  The mere proposition that disclosure of documents from the claim and investigation file in this case would cause "very serious injury" or "substantial competitive harm" to Lexington's business is absurd.

**C.**   **The documents address Lexington's evaluation of and valuation of Plaintiff's claim and are therefore relevant or reasonably calculated to lead to admissible evidence.**

Lexington's sole surviving argument, that the documents are irrelevant, is untenable.  Relevance for discovery purposes is <u>extremely broad</u>.  *Lewis v. ACB Business Services, Inc.,* 135 F.3d 389, 402 (6th Cir.1998).  By Lexington's own "description," each withheld document relates to Plaintiff's claim and/or the investigation of Plaintiff's claim.  (Redaction log – Exhibit K).  They directly relate to this case and,

therefore, fall well within the broad scope of relevant discovery.  The so-called "reserve information" is relevant to Lexington's assessment and valuation of Plaintiff's first-party claim for damages and may lead to the discovery of relevant information.

Contrary to Lexington's argument, national courts have not established a hard and fast rule against discovery of reserve information.  Instead, this material is subject to the same discovery standard as all other material.  *State ex rel. Erie Ins. Property & Cas. Co. v. Mazzone*, 625 S.E.2d 355, 360 (W.Va.2005).  "It is widely recognized that relevancy of reserve information turns on the unique factors presented in each case."  *Id* (citations omitted).

When a plaintiff brings a claim for first-party benefits against its own insurer, courts routinely hold that reserve information is relevant to how the insurer assessed and valued the claim and is, therefore, discoverable.[2]  Just as in those cases, information about the reserve is relevant, or potentially relevant, to what Lexington actually thought about the merits and value of Plaintiff's claim.  Moreover, as demonstrated above, Lexington did not merely redact information about the reserve placed on the file, but inexplicably withheld extensive claim and damage evaluation information in the "Damages/Injury Assessment" and "Potential Exposure" sections of

---

[2] *Auto-Owners Ins. Co. v. C & J Real Estate Inc.*, 2013 WL 4240235, *3-*4 (Ind.App.2013) (holding that, since the plaintiff sued its first-party insurer, documents containing reserve information is relevant and discoverable); *Woodruff v. American Family Mut. Ins. Co.*, --- F.R.D. ---, 2013 WL 1729403, *11-*12 (S.D.Ind.2013); *Cunningham v. The Standard Fire Ins. Co.*, 2008 WL 2902621, *1 (D.Colo.2008) (reserve info. potentially relevant and discoverable in first-party action to recover benefits under homeowner's policy); *U.S. Fire Ins. Co. v. Bunge North America, Inc.*, 244 F.R.D. 638, 644-645 (D.Kan.2007) (reserve information might "lead to admissible evidence relating to the insurers' own beliefs about coverage and their liability"); Compton v. Allstate Property & Cas. Ins. Co., 278 F.R.D. 193, 198 (S.D.Ind.2007); Bernstein v. Travelers Ins. Co., 447 F.Supp.2d 1100, 1114 (N.D.Cal.2006) (reserve relevant to what insurer "actually thought about the merits and values of . . . claim").

the claims summary, (Exhibit M), the "Estimate of Loss" section of the claim report, (Exhibit N), as well as emails and correspondence, (Exhibit O).  This information establishes how Lexington evaluated the claim, is directly relevant, and falls well within the broad scope of discovery under Rule 26.

Lexington's argument that "the vast majority of jurisdictions have ruled that reserve information is not discoverable" is misleading.  Lexington fails to notify the Court that its cited cases either addressed information protected by the attorney-client/work-product privileges, which are not at issue here,[3] or cases involving claims against third-party or liability insurers.[4]

---

[3] See *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 139 F.R.D. 609, 614 (E.D.Pa.1991) (reserve figures are not discoverable because they "reveal the mental impressions, thoughts, and conclusions of an attorney in evaluating a legal claim"); *Independent Petrochemical Corp. v. Aetna Cas. & Sur. Co.*, 117 F.R.D. 283, 288 (D.D.C.1986) (reserve information "most likely will be work product and may also reflect attorney-client privilege communications");

[4] See also *Leksi, Inc. v. Federal Ins. Co.*, 129 F.R.D. 99 (D.N.J.1999) (sole issue in dec. action was whether liability policy required insurer to defend and indemnify policyholder in third-party tort action); *In re American Home Assur. Co.*, 88 SW3d 370, (Tex.App.2002) (same); *Schierenberg v. Howell-Baldwin*, 571 N.E.2d 3345, 337 (Ind.App.1991) (discovery of reserve information from third-party liability insurer prohibited because it would violate rule against interjecting "liability insurance in a negligence case"; court in *Auto-Owners v. C & J Real Estate,* see note 1, later held that *Schierenberg* did not govern in an action against a first-party property insurer); *Rhone-Poulenc, supra* (dec. action against liability insurer); *Independent Petrochemical, supra* (dec. action against liability insurer in third-party tort claim); *Clark Equipment Co. v. Liberty Mutual Ins.*, 1995 WL 867344 (Del.Super.1995) (same); *Fidelity and Deposit Co. of Maryland v. McCulloch*, 168 F.R.D. 516, 525 (E.D.Pa.1996) (same); *Federal Realty Inv. Trust v. Pacific Ins. Co.*, 760 F.Supp. 533, 540 (D.Md.1991) (reserve information not discoverable in action to recovery defense costs incurred during breach of K claim from liability insurer, since info. merely reflected carrier's guess at outcome of third-party litigation); *Heights at Issaquah Ridge v. Steadfast Ins. Co.*, 2007 WL 4410260 (W.D.Wash.2007) (case addressed interpretation of liability policy).  The factual context and analysis in Lexington's remaining case, the unpublished, non-Eastern District decision in *Safeguard Lighting Systems v. N. American Specialty Ins. Co.*, 2004 WL 3037947 (E.D.Pa.2004), is too cryptic to be persuasive.

17

Lexington's objections raise a new argument, not included in its July 26, 2013 response, (Response, Doc. # 21), that reserve information is irrelevant purportedly because Plaintiff's complaint seeks only declaratory relief and that "money damages are not at issue in this lawsuit." (Id., pg. 6). Because Lexington failed to properly raise this argument before the Magistrate Judge, it is not preserved for a Rule 72 objection. *Cupit v. Whitley*, 28 F.3d 532, 535 (5th Cir.1994), cert. denied, 513 U.S. 1163 (1995) ("A party is not entitled to raise new theories or arguments in its objections that the party did not present before a magistrate judge."); *Rodriguez v. Pataki*, 293 F.Supp.2d 313, 315 (S.D.N.Y.2003); *Kirk v. Meyer*, 279 F.Supp.2d 617, 619 (E.D.Pa.2003).

Even if preserved, Lexington's characterization of Plaintiff's complaint is incorrect. While Plaintiff's complaint includes requests for declaratory relief regarding the "period of restoration" issue, the complaint also specifically states a breach of contract action and requests entry of a judgment awarding Plaintiff (1) the amount of the appraisal award; (2) penalty interesting owing under Mich. Comp. Laws § 500.2006, and (3) "all consequential damages including attorney fees and costs." (Complaint, Doc. #1, ¶¶ 26-29 and Wherefore Clause – Exhibit A). Plaintiff has unquestionably stated a breach of contract claim for first-party property insurance benefits against Lexington. Plaintiff has also claimed statutory penalty interest. Lexington's valuation of Plaintiff's claim is directly relevant to both the breach of contract and penalty interest claims for money damages.

Finally, even if this case solely addressed coverage issues, as Lexington falsely contends, the subject documents are still relevant and discoverable. Lexington's assessment of the claim may reveal its true position regarding not only damages, but

the validity of any alleged coverage issues.  Moreover, the presence of coverage issues on a portion of the remaining lost business income, extra expense and contents claims may still require determination, by either the appraiser or Court, of Plaintiff's damages. Lexington's position, even if accurate, does not render the documents irrelevant.

Lexington has utterly failed to meet its burden of demonstrating Magistrate Judge Randon's August 13, 2013 order requiring production of the designated documents was either clearly erroneous or contrary to law.  As demonstrated above, Lexington's current objections are merely part of its ongoing campaign to delay, at all costs, resolution and payment of Plaintiff's claim.  Lexington has already violated this Court's instructions, at the March 5, 2013 status conference, to produce its designee for a Rule 30(b)(6) deposition.  Lexington now apparently intends to violate Magistrate Judge Randon's Order to produce the designee for the deposition at Plaintiff's counsel's offices by September 12, 2013.  Lexington's attorney has not even replied to Plaintiff's counsel's August 16, 2013 letter giving no less than seven proposed dates for the deposition. (Fabian 8/16/13 letter – Exhibit P).  Lexington's objections to the Magistrate Judge's Order must be denied.

Plaintiff submits that Lexington's objections to the Magistrate Judge's Order must be denied and the Court should compel Lexington to produce its designated representative for a 30(b)6 deposition at Plaintiffs counsel's office at a date and time to be set by Plaintiff, Order the immediate production of the above-referenced documents immediately, and assess sanctions against Lexington for its frivolous positions and the unnecessary costs and attorneys' fees it has caused Plaintiff to incur.

Respectfully submitted,


/s/Michael H. Fabian
MICHAEL H. FABIAN (P29024)
FABIAN, SKLAR & KING, P.C.
Attorneys for Plaintiffs
33450 W. 12 Mile Road
Farmington Hills, Michigan 48331
(248) 553-2000
mfabian@fabiansklar.com

Dated:  September 9, 2013

### CERTIFICATE OF SERVICE

Michael H. Fabian certifies and affirms that on September 9, 2013 I served a copy of the foregoing paper and this Certificate of Service upon:

Peter Kanaris, Esq.
Cheryl Mondi, Esq.
Fisher Kanaris, P.C.
200 South Wacker Drive, 22nd Floor
Chicago, IL 60606
(312) 474-1400
pkanaris@fisherkanaris.com
cmondi@fisherkanaris.com

Daniel J. Seymour (P38908)
Nagi, Baxter & Seymour
155 West Congress, Ste. 300
Detroit, MI 48226
dseymour@nbslawyer.com

electronically via the court's CM/ECF system which will send notification of such filing to the above.

I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants:  NONE

/s/Michael H. Fabian
FABIAN, SKLAR & KING, P.C.
Attorneys for Plaintiffs
33450 W. Twelve Mile Rd.
Farmington Hills, MI 48331
(248) 553-2000
mfabian@fabiansklar.com

Date:  September 9, 2013