UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

URBCAMCOM/WSU I, LLC,

        Plaintiff,

                                        Case No. 12-CV-15686

vs.                                  HON. GEORGE CARAM STEEH

LEXINGTON INSURANCE CO.,

        Defendant.

_____/

## ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT (Doc. 47)

This breach of contract dispute arises out defendant Lexington Insurance

Company's ("Lexington's") refusal to pay business interruption losses and extra

expense claims allegedly incurred when an apartment building owned by plaintiff

UrbCamCom/WSU I, LLC ("Union") sustained water damage.  Union has filed a motion

for partial summary judgment seeking an order compelling Lexington to submit the

business interruption and extra expenses loss claims to an Appraisal, a declaration that

the period of restoration is a fact question for the Appraisal Panel, and a judgment that

Union is entitled to 12 percent penalty interest.  Oral argument was heard on April 17,

2014.  For the reasons set forth below, Union's motion for partial summary judgment

shall be granted.

## I. Background

Union owns a new upscale apartment building, known as the Union at Midtown,

in the area of Wayne State University which it rents to college students.  On January 16,

2012, two fire sprinklers ruptured causing the building to sustain severe water damage

rendering the apartments uninhabitable.  On March 14, 2012, Union submitted to
Lexington a proof of loss for damages to the apartment building in the amount of
approximately $5.6 million.  Lexington made a partial payment of $1.8 million, disputed
the total amount sought, and pursuant to the policy and Michigan law, the parties
submitted their disagreement to an Appraisal.  At the Appraisal, each side was
represented by counsel, relied on their own appraiser, and submitted testimony of five
experts.  In addition, the parties' appraisers agreed on a neutral umpire.  After hearings
and inspections of the building, the Appraisal Panel issued a partial appraisal award on
October 10, 2012, which provided for replacement cost value of repairs in the amount of
$5.27 million and an actual cash value award of $5.04 million.  As a result of the
Appraisal, Lexington paid Union an additional $3.2 million actual cash value payment on
the building loss on November 8, 2012.  In addition, because the apartment complex
was uninhabitable, Lexington made payments exceeding $900,000 for business
interruption losses and extra expenses.

As of September 30, 2012, however, Lexington stopped paying business
interruption losses.  Union claimed additional amounts were owing for business
interruption losses and extra expenses which Lexington denied.  On November 27,
2012, Union sought binding appraisal of the unresolved business interruption claim and
contents storage claims, but Lexington claimed that the disagreement was a coverage
issue, which could not be resolved through the appraisal process.  Union then filed this
lawsuit on December 28, 2012, seeking a declaratory judgment that all disputes
concerning the business interruption loss claim be submitted to an Appraisal Panel, that

this court determine the "period of restoration" is a fact issue for the Appraisal Panel, and enter a judgment in the amount of the Appraisal award plus interest.

Union claims that the repairs could not have been completed by the time Lexington stopped paying business interruption losses on September 30, 2012, because (1) Lexington had only paid $1.8 million of its claim and repairs costs more than $5 million, and (2) the Appraisal was ongoing so Union could not make repairs before the Appraisal Panel conducted its inspection of the apartment building to determine the loss.

The relevant portions of the insurance policy are set forth below.  The policy defines business interruption loss:

**B.    BUSINESS INTERRUPTION**

Business Interruption means loss resulting from necessary interruption of business conducted by the Insured and caused by direct physical loss or damage by any of the perils covered herein during the term of this policy to Real and/or Personal Property as covered herein.

If such loss occurs during the term of this policy, it shall be adjusted on the basis of the actual loss sustained by the Insured, during the period of restoration, consisting of the net profit (or loss) which is thereby prevented from being earned and of all charges and expenses, but only to the extent that they must necessarily continue during the interruption of business, and only to the extent to which they would have been incurred had no loss occurred.

(Doc. 47, Ex. N at 3).  The policy defines extra expenses:

**C.    EXTRA EXPENSE**

Extra expense meaning the excess cost necessarily incurred to continue the operation of the Insured's business or facility that would not have been incurred had there been no loss or damage by any of the perils covered herein during the term of this policy to Real and/or Personal Property as covered herein.

Id.

-3-

The policy defines the "period of restoration" as follows:

**(1) PERIOD OF RESTORATION**

Period of restoration means the period of time that:

(a) Begins with the date of direct physical loss or damage by any of the perils covered herein, at the described premises; and

(b) Ends on the date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality.

Id. at 4.  The policy defines when an Appraisal is required and sets forth the procedures for an Appraisal:

**APPRAISAL**

If the Insured and the Company fail to agree on the amount of loss, each upon written demand either of the Insured or of the Company made within sixty (60) days after receipt of proof of loss by the Company, shall select a competent and disinterested appraiser.  The appraisers shall then select a competent and disinterested umpire.  If they should fail for fifteen (15) days to agree upon such umpire, then upon the request of the Insured or of the Company such an umpire shall be selected by a judge of a court of record in the county and state in which such appraisal is pending.  Then at a reasonable time and place, the appraisers shall appraise the loss stating separately the value at the time of loss and the amount of loss.  If the appraisers fail to agree, they shall submit their differences to the umpire.  An award in writing of any two shall determine the amount of loss. The Insured and the Company shall each pay his or its chosen appraiser and shall bear equally the other expense of the appraisal and of the umpire.  For the purposes of this provision, values as stated above shall mean that value used by the Insured in making annual reports under this insurance.

Id. at 12.

## II. Standard of Law

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a

-4-

matter of law."  See Redding v. St. Eward, 241 F.3d 530, 532 (6th Cir. 2001).  The
Supreme Court has affirmed the court's use of summary judgment as an integral part of
the fair and efficient administration of justice.  The procedure is not a disfavored
procedural shortcut.  Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986); see also Cox
v. Kentucky Dept. of Transp., 53 F.3d 146, 149 (6th Cir. 1995).

        The standard for determining whether summary judgment is appropriate is
"'whether the evidence presents a sufficient disagreement to require submission to a
jury or whether it is so one-sided that one party must prevail as a matter of law.'"
Amway Distributors Benefits Ass'n v. Northfield Ins. Co., 323 F.3d 386, 390 (6th Cir.
2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)). The
evidence and all reasonable inferences must be construed in the light most favorable to
the non-moving party.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S.
574, 587 (1986); Redding, 241 F.3d at 532 (6th Cir. 2001).  "[T]he mere existence of
some alleged factual dispute between the parties will not defeat an otherwise properly
supported motion for summary judgment; the requirement is that there be no genuine
issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)
(emphasis in original); see also National Satellite Sports, Inc. v. Eliadis, Inc., 253 F.3d
900, 907 (6th Cir. 2001).

        If the movant establishes by use of the material specified in Rule 56(c) that there
is no genuine issue of material fact and that it is entitled to judgment as a matter of law,
the opposing party must come forward with "specific facts showing that there is a
genuine issue for trial."  First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 270 (1968);
see also McLean v. 988011 Ontario, Ltd., 224 F.3d 797, 800 (6th Cir. 2000).  Mere

allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party.  Anderson, 477 U.S. at 248, 252.  Rather, there must be evidence on which a jury could reasonably find for the non-movant.  McLean, 224 F.3d at 800 (citing Anderson, 477 U.S. at 252).

### III. Analysis

**A.     Whether the Period of Restoration is a Coverage Issue for the Court to Decide or a Loss Issue Subject to Appraisal**

The parties agree and the law is well settled that "the issue of an insurance policy's coverage is for the court to decide, not the appraisers."  Angott v. Chubb Group of Ins. Cos., 270 Mich. App. 465, 473 (2006).  The parties dispute, however, whether the determination of the period of restoration is a coverage question or a factual inquiry as to the amount of damages.  When the amount of loss is in dispute, the appraisal process is preferred over judicial determination because it is "a simple and inexpensive method for the prompt adjustment and settlement of claims."  Auto-Owners Ins. Co. v. Kwaiser, 190 Mich. App. 482, 486 (1991) (citations omitted).  Lexington argues that the court should rule as a matter of law that the period of restoration in this case is six months after the loss, which Lexington claims is the date the repairs should have been completed with reasonable speed.  Union argues the time it would reasonably take to reopen the apartment building to renters is a factual issue over the amount of damages owing.  For the reasons set forth below, the period of restoration determination should be made by an appraisal.

The policy at issue here sets forth an appraisal provision requiring that loss claims be adjudicated by appraisal.  (Doc. 47, Ex. N at 12).  Michigan law provides for an appraisal process:

> (m) That if the insured and insurer fail to agree on the actual cash value or amount of the loss, either party may make a written demand that the amount of the loss or the actual cash value be set by appraisal.

Mich. Comp. Laws § 500.2833(1)(m).  The policy at issue here specifically provides that business interruption loss "shall be adjusted on the basis of the actual loss sustained by the insured, during the period of restoration."  (Doc. 47, Ex. N at 3).  By incorporating the "period of restoration" requirement into the business interruption loss provision, the policy provides that the actual loss determination necessarily includes valuation of the period of restoration.

In King v. Hartford Cas. Ins. Co., No. 10-CV-12209, 2010 WL 5390135, *1 (E.D. Mich. Dec. 22,  2010), the district court, interpreting Michigan law, compelled arbitration on the business interruption loss claim where the insured claimed the period of business income loss was 12 months and insurer claimed the period of restoration was 60-days. See also Artist Bldg. Partners v. Auto-Owners Mut. Ins. Co., No. M2012-00915, 2013 WL 6169337, *14 (Tn. Ct. App. Nov. 21, 2013) (appraisal panel did not exceed its authority in determining period of restoration).

The district court reached a similar result in Smith v. State Farm & Cas. Co., 737 F. Supp. 2d 702 (E.D. Mich. 2010) (Borman, J.).  In that case, plaintiff-insured's suffered smoke damage in their home caused by a fire.  Id. at 705.  Defendant-insurer admitted liability and began payments to the homeowners for alternative living expenses.  Id. The parties disagreed on the amount of the loss, including the amount owing for

alternative living expenses, and submitted the matter to an appraisal.  Id.  As part of that

process, plaintiff's expert prepared an air quality report finding that some damage to the

home was caused by "contaminants."  Id.  Based on the expert report, defendant-

insurer claimed that some of the losses were excluded by the policy and were the

subject of a coverage dispute for the court, and were not proper for an appraisal.  Id. at

706.  The court disagreed, granted the insured's motion for preliminary injunction, and

ordered the insurer to return to the appraisal process.  Id. at 715.  The court explained

that there was no question as to the legal definition of what was covered under the

policy: damage caused by fire/smoke was covered, and damage caused by

contaminants was not.  Id. at 710.  The court held that fact questions over the extent of

damages, which includes a determination as to which losses were caused by the

covered event, were the proper subject of the appraisal process.  Id. at 711-12.  The

court rejected the notion that a coverage dispute existed, finding that the case

presented a "scope-of-loss issue on an admittedly covered claim."  Id. at 711.

     For the same reasons, the amount of business interruption losses owing in this

case is a "scope-of-loss" issue as to the amount of damages owing, and is not a

coverage issue for the court to decide.  The parties agreed to submit to an appraisal

process, and their agreement should be enforced here.  An appraisal panel is in a better

position than the court or a jury to consider inventories, inspect the building, review

photographs, address the particularities of commercial building construction, and

determine the period for which business interruption losses are due and owing.

     As in the Smith case, Union relies upon an INS Bulletin issued in 2006–2007 by

the State of Michigan, Department of Labor and Economic Growth, Office of Financial

and Insurance Services ("OFIS Bulletin") (Doc. 70). The OFIS Bulletin, interpreting

Mich. Comp. Laws § 500.2833(1)(m) which requires that property insurance companies

submit disputes over the amount of loss to appraisal, states in pertinent part:

> Once an insurer determines that a loss is covered under the subject policy of
> insurance, and there is a demand for appraisal by the policyholder or insurer,
> disagreements between policyholders and insurers over factual issues of
> whether some of the damages claimed by the policy holder are part of the
> amount of loss caused by the covered event are part of the appraisal process.
> These issues do not constitute a "coverage question" for the Courts, and are
> manifestly included within the mandatory legislative requirements that disputes
> over the "amount of loss" be subject to appraisal.

Id.

At oral argument, Union argued that the Sixth Circuit's decision in Bard's Apparel

Mfg., Inc. v. Bituminous Fire & Marine Ins. Co., 849 F.2d 245 (6th Cir. 1988), supported

its argument that the period of restoration is an issue for appraisal.  In that case, the

issue over the period of restoration was decided by a jury, and the court ruled that the

insurer had waived its right to an appraisal, waited an unreasonable time to demand an

appraisal, and in any event, the business interruption loss was not subject to appraisal.

Id. at 249.   While Bard's Apparel does not support Union's argument that the period of

restoration should be decided in the first instance by an appraisal panel, this court is

guided by precedent from the Courts of Appeals for the Second Circuit which does

support this conclusion.

The Second Circuit's recent decision in Amerex Group, Inc. v. Lexington Ins. Co.,

678 F.3d 193 (2d Cir. 2012) is instructive.  While both sides rely on this case to support

their competing positions, the decision only supports plaintiff's cause.   In Amerex

Group, an insured brought a claim for losses, including business interruption losses,

incurred when its warehouse rack collapsed, activating the premises' sprinkler system and causing flooding.  Id. at 197.  The insured filed a complaint in district court and the insurer filed a motion to compel an appraisal which the district court granted.  Id. at 195.  The appraisal panel issued a valuation decision and determined the period of restoration.  Id. at 198.  The district court confirmed the appraisal award.  On appeal, the insured argued that the appraisal panel improperly made coverage decisions which were for the court to decide.  Id. at 199.

The Second Circuit ruled that "the calculation of the restoration period, unless subject to legal challenges, is a factual question about damages - albeit sometimes a complex and contentious one - appropriately addressed by an appraiser."  Id. at 205.  In Amerex Group, the Second Circuit found that the cause of the insured's lost business income was a fact question for the appraisal panel, even though the panel was not called upon merely to make value determinations, but was required to exercise discretion and judgment by weighing many factors including the rack collapse, the 2001 recession, the September 11 terrorist attacks, and the bankruptcies of the insured's leading customers to determine lost business income.  Id. at 206.  The Second Circuit recognized that the appraisal panel was required to do much more than mechanically determine the loss, but was required to make complex decisions among competing theories of loss.  Id.  Nevertheless, the Court of Appeals determined that despite its complexity, the panel decided an issue of fact over damages as it was not called upon to interpret any specific legal issue of contract interpretation.  Id.  As in Amerex Group, the issue of business interruption losses here does not involve a legal dispute over

2:12-cv-15686-GCS-DRG   Doc # 71   Filed 04/23/14   Pg 11 of 18   Pg ID 3147

coverage, but is a fact question as to the amount of the loss for the Appraisal Panel to decide.

A similar issue arose in <u>Williamson v. Chubb Indem. Ins. Co.</u>, No. 11-cv-6476, 2012 WL 760838, *4 (E.D. Pa. Mar. 8, 2012), where the district court granted the insurer's motion to dismiss pending an appraisal. In that case, the court found issues over the valuation of items lost in a windstorm, whether certain items needed to be repaired, and the value of such repairs were all appropriate questions for an appraisal. The court explained that coverage issues, which are exempt from appraisal, "occurs when an insurance company claims an exclusion of a loss under the terms of the insurance policy. . . . However, when the parties merely disagree over the extent of damage or whether a covered peril is the cause of certain damage, that is a dispute regarding the amount of loss and is proper for appraisal." <u>Id.</u> The district court explained:

> Estimating the dollar value of a loss presupposes a judgment of what repairs are necessary to recoup from the loss. Appraisers could not perform their duties if they were prohibited from opining on these matters. . . .But to say such disputes are sufficient to negate the appraisal provision in the policy would effectively eliminate appraisal as a workable method of alternative dispute resolution.

<u>Id.</u> As in <u>Williamson</u>, Lexington does not seek to avoid coverage under any specific exclusion in the policy, and does not deny coverage is owing under the business interruption provision of the policy. In fact, Lexington has already paid such losses from the date of the water damage in January, 2012, until September 30, 2012. The dispute here is over the amount owing based on a factual analysis as to how long it should reasonably have taken Union to repair the damaged apartment building. This question requires the Appraisal Panel to consider which repairs were necessary to reopen the

-11-

building and to estimate how long it should have taken Union to make those repairs.
This goes to the "amount of the loss" which falls squarely within the ambit of the
appraisal provision set forth in the policy.  (Doc. 47, Ex. N at 12).

Lexington's reliance on Duane Reade, Inc. v. St. Paul Fire & Marine Ins., 411
F.3d 384 (2nd Cir. 2005) is misplaced.  In that case, the insured plaintiff's drug store,
located at the World Trade Center, was destroyed in the 9-11 terrorist attacks.  Plaintiff
brought a claim for business interruption losses, claiming that it should recover such
losses until the World Trade Center was rebuilt.  Id. at 388.  The insurer argued, on the
other hand, that the period of restoration would end once the insured could build a
replacement store somewhere in the vicinity of the former World Trade Center.  Id. at
387.  In its demand for an appraisal, the insurer specifically excluded the issue of the
"appropriate period of restoration" for the court to decide.  Id. at 391.  The district court
analyzed the contract language to determine if the policy required that the drugstore be
rebuilt on the same premises, by analyzing several provisions of the policy, including
the policy's restoration period clause, the extended recovery period clause, the
attractions properties provision, whether the policy identified the World Trade Center by
name anywhere in the document, and how the policy's declaration page identified the
insured's premises.  Id. at 393-99.

On appeal, the Second Circuit also analyzed the policy provisions to determine
how the period of restoration should be calculated, and modified the district court's
conclusions, ruling that the period of restoration would end once the insured could
resume operations in a permanent location reasonably equivalent to its former site.  Id.
In Duane Reade, once the Second Circuit ruled the drugstore need not be rebuilt on its

former site, the appraisers determined the amount of business interruption losses and the period of restoration. <u>Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.</u>, 503 F. Supp. 2d 699, 702 (S.D.N.Y. 2007), <u>aff'd</u>, 600 F.3d 190 (2d Cir. 2010). The district court confirmed the appraiser's determination of the period of restoration. <u>Id.</u>

In this case, the issue over the length of time it should reasonably have taken Union to repair the apartment building is markedly similar to the issue ultimately presented to the appraisers in <u>Duane Reade</u>, once the court decided the narrow legal issue of what was meant by the restoration period. This determination requires considerations such as the magnitude of the loss, the time needed for repairs, the types of replacement materials to be used and how soon those materials could be obtained, and other factors that will impact the timing for making repairs. These are factual inquiries as to the amount of damages to be submitted to the Appraisal Panel.

Lexington also relies on <u>Turnstone Consulting Corp. v. U.S. Fidelity & Guar. Co.</u>, No. C 07-01216, 2007 WL 1430033, at *3-4 (N.D. Cal. 2007) which does tend to support its position, although it is of no precedential value. In that case, the insured was burglarized and claimed that as a result, he was forced to shut down his business for eight weeks. <u>Id.</u> at *3. The insurer, on the other hand, argued that the insured should have had its business back on the ground after two weeks. <u>Id.</u> The district court ruled that the issue of duration of time for the insured to get its business going again, was a coverage dispute which should not be submitted to an appraisal. <u>Id.</u> at *4. The court recognized that its decision was at odds with an analogous case from the Southern District of New York, <u>Duane Reade, Inc. v. St. Paul Fire & Marine Ins., Co.</u>, 279 F. Supp. 2d 235 (S.D.N.Y. 2003), <u>aff'd</u>, 411 F.3d 384 (2d Cir. 2010), which held that

-13-

calculation of the restoration period was the proper subject for appraisal.  Turnstone is

not controlling here as it is based on California law, and its reasoning is not persuasive.

In sum, the dispute here over Union's business interruption claim is a factual

dispute only as to the amount owing, not a dispute over whether coverage exists.  The

Appraisal Panel is not being called upon to interpret the policy or to determine whether

any exclusions apply, but only to evaluate losses based on an analysis of the damage

to the property, a determination of the cost of repairing the apartment building with

materials of similar quality, and a determination of the reasonable time it would take to

undertake repair of the building based on the aforementioned factors.  Lexington does

not dispute that it is liable for business interruption losses arising out of the water

damage caused when the sprinklers ruptured, but only contests the amount due.  Under

these circumstances, calculation of the business interruption losses shall be decided by

appraisal, the very process agreed to by the parties, and provided for in the policy and

under Michigan law.  Mich. Comp. Laws § 500.2833(1)(m).

Finally, Lexington argues that this court should rule as a matter of law that the

"period of restoration" in this case is six months, and thus, its obligation to pay business

interruption losses ended in July, 2012.[1]  In support of this argument, Lexington relies

on many cases for the proposition that the time needed to complete repairs for a

business interruption claim is a *hypothetical* inquiry depending on what should have

happened given the exercise of due diligence, and is not to be based on the *actual* time

the insured took to make repairs.  Because this court has ruled that it is for the

---

[1]It is interesting to note that Lexington paid business interruption losses through
September, 2012.

-14-

Appraisal Panel to determine the business interruption claim, this court denies

Lexington's request that it rule that the period of restoration ended six months after the

date that the burst pipes activated the sprinkler system, causing severe water damage

to Union's apartment building, and leaves this factual inquiry over the duration of the

business interruption losses to the Appraisal Panel in the first instance.

**B.    Factors for the Appraisal Panel to Consider**

Union also asks this court to declare that in deciding the "period of restoration,"

the Appraisal Panel should consider (1) the duration of the underlying Appraisal

process, and (2) that Lexington's delay in paying the claim until after the Appraisal

award was entered prevented Union from completing repairs any sooner.  Having

already determined that the calculation of the "period of restoration" is a fact question

over the amount of the loss, not a coverage issue for the court to decide, it would be

inappropriate for this court make the ruling urged by Union.  It is for the Appraisal Panel

to decide the end date as to "when the property at the described premises should be

repaired, rebuilt or replaced with reasonable speed and similar quality."  (Doc. 47, Ex. N

at 4).  The Union may present the above factors to the Appraisal Panel to consider, and

it is for the Appraisal Panel, and not this court, to determine the weight, if any, to afford

to these circumstances.

**C.    Extended Business Interruption Coverage Under Endorsement #001**

Union also claims its alleged loss under Endorsement #001, which provides for

extended business interruption coverage, should be decided by an Appraisal.

Endorsement #001 provides that the policy "[i]ncludes 365 extended period of indemnity

as respects BI [business interruption.]" (Doc. 47, Ex. G at 3).  Lexington argues that

-15-

Union cannot recover under Endorsement #001 because Union failed to repair or replace the covered damage with reasonable speed as required under the "period of restoration, " and that extended coverage does not begin until the insured completes all repairs.  At his deposition, Lexington's representative, James Doody, testified that the 365-day period of extended business interruption coverage begins when the "period of restoration" ends.  (Doc. 47, Ex. D at 210).  He further testified that Union is not entitled to extended business interruption losses because Union has not completed all repairs within the "period of restoration."  Id. at 210-217.  Whether the Union made repairs within the period of restoration is a fact question over the amount of loss for the Appraisal Panel.  For the same reasons, whether or not Union is entitled to extended business interruption coverage under Endorsement #001 is a fact question over the amount of damages for the Appraisal Panel to decide.

**D.    Penalty Interest**

Plaintiff argues that it is entitled to twelve percent penalty interest under Mich. Comp. Laws § 500.2006(4) because defendant failed to pay after plaintiff submitted satisfactory proof of loss.  Plaintiff submitted its proof of loss claim on March 14, 2012. (Doc. 47, Ex. C).  Lexington argues that it timely paid the undisputed portion of plaintiff's claim in the amount of $1,880,536.22 on May 12, 2012.  On October 12, 2012, the Appraisal Panel issued an award calculating the building damage at an RC amount of $5,270,661.28 and an ACV value of $5,039,806.28.  Union then filed a new proof of loss seeking the appraisal amount on October 31, 2012.  On November 5, 2012, Lexington paid $3,188,171.60, the amount ordered under the Appraisal Award.  Mich. Comp. Laws § 500.2006(4) provides:

-16-

(4) If benefits are not paid on a timely basis the benefits paid shall bear simple interest from a date 60 days after satisfactory proof of loss was received by the insurer at the rate of 12% per annum, if the claimant is the insured or an individual or entity directly entitled to benefits under the insured's contract of insurance. If the claimant is a third party tort claimant, then the benefits paid shall bear interest from a date 60 days after satisfactory proof of loss was received by the insurer at the rate of 12% per annum if the liability of the insurer for the claim is not reasonably in dispute, the insurer has refused payment in bad faith and the bad faith was determined by a court of law. The interest shall be paid in addition to and at the time of payment of the loss. If the loss exceeds the limits of insurance coverage available, interest shall be payable based upon the limits of insurance coverage rather than the amount of the loss. If payment is offered by the insurer but is rejected by the claimant, and the claimant does not subsequently recover an amount in excess of the amount offered, interest is not due. Interest paid pursuant to this section shall be offset by any award of interest that is payable by the insurer pursuant to the award.

Mich. Comp. Laws § 500.2006(4). In Griswold Properties, LLC v. Lexington Ins. Co., 276 Mich. App. 551, 566 (2007), the court held that pursuant to § 500.2006(4) a first-party insured is entitled to 12 percent penalty interest if a claim is not timely paid, "irrespective of whether the claim is reasonably in dispute." In this case, Lexington does not dispute that Union submitted satisfactory proof of loss on March 14, 2012, but argues it paid only the undisputed portion of the claim. Irrespective of whether the proof of loss was in reasonable dispute, Union is entitled to 12 percent penalty interest beginning 60 days later, from May 12, 2012 until Lexington paid the loss on November 5, 2012. Id.; see Mathis v. Encompass Ins. Co., No. 06-CV-13837, 2008 WL 919934, at *4 (E.D. Mich. 2008) (Steeh, J.) Accordingly, Union is entitled to summary judgment on its claim for penalty interest.[2]

---

[2]Lexington also argues that it has a fraud defense to Union's claims. By prior order, this court denied Lexington's motion to amend its affirmative defenses to add a fraud claim on the basis that any such claim would be futile under Foman v. Davis, 371 U.S. 178, 182 (1962). (Doc. 61). Accordingly, the court does not address those issues here.

## IV. Conclusion

For the reasons stated above, Union's motion for partial summary judgment (Doc. 47) is GRANTED and Union's motion to compel an appraisal of its business interruption loss, extra expense, and contents storage, is GRANTED.

Lexington is ORDERED to pay 12 percent penalty interest on $3,188,171.60, assessed from May 14, 2012 until November 8, 2012.  IT IS FURTHER ORDERED that Union is entitled to 12 percent penalty interest on any amount subsequently due, if any, as determined by the Appraisal Panel.

Union's request for Rule 11 sanctions is DENIED.

This court shall retain jurisdiction to consider motions to vacate, set aside, or enforce any appraisal award.  This matter is STAYED pending a determination by the Appraisal Panel and this matter is ADMINISTRATIVELY CLOSED until that time.  After the Appraisal Panel renders its decision, this case may be reopened upon petition of either party.

**IT IS SO ORDERED.**

Dated:  April 23, 2014

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on April 23, 2014, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk