UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

URBCAMCOM/WSU I, LLC,

    Plaintiff,

vs.

Case No. 12-CV-15686
HON. GEORGE CARAM STEEH

LEXINGTON INSURANCE CO.,

    Defendant.
_____/

**ORDER DENYING DEFENDANT'S MOTION TO APPOINT
DISINTERESTED AND IMPARTIAL UMPIRE (Doc. 72)**

    Now before the court is defendant's motion for the court to (1) appoint an umpire, (2) to declare that Richard Guider, who presided as umpire over the property damage appraisal, is not disinterested or impartial and thus cannot preside over the appraisal of plaintiff's business interruption loss claim, and, (3) to disqualify plaintiff's appraiser Ethan Gross. Oral argument was heard on July 15, 2014. For the reasons set forth below, defendant's motion shall be denied in its entirety.

**Background**

    Plaintiff UrbCamCom/WSU, LLC owns a student housing apartment complex near Wayne State University which sustained significant water damage when two fire sprinklers ruptured on January 16, 2012. Defendant paid business interruption losses for six months (until September 30, 2012) totaling about $900,000. The issue of building damage was submitted to appraisal and an appraisal award was made on October 10, 2012 in the amount of $5.04 million actual cash value. Plaintiff claimed

1

business interruption losses were owing beyond the six months paid and sought to have the issue resolved by appraisal.  Defendant refused to submit the business interruption loss to appraisal arguing that the matter was a coverage issue for the court to decide.  This lawsuit addressed the sole issue of whether the business income loss claim, extra expenses, and content storage claims, were also subject to appraisal.  On April 23, 2014, this court granted plaintiff's motion for partial summary judgment and ordered that the parties submit to an appraisal to determine the period of restoration and the amount due for business interruption losses, extra expenses, and contents storage.  The court then stayed the case pending the appraisal process and administratively closed the case.

During the earlier appraisal of the building damage claim, plaintiff selected Ethan Gross and defendant selected Thomas Costantini as their appraisers.  Gross and Costantini selected as umpire Richard Guider of Grand Rapids.  Plaintiff plans to use Gross again and expects Guider to continue as the umpire.   Although in its initial motion to appoint a neutral umpire, it appeared that defendant planned to use Constantini again, in their reply brief, defendant advised the court that as of June 20, 2014, (two weeks after plaintiff filed its response brief) defendant retained a new appraiser - Peter Fogarty - who objected to continuing to use Guider as umpire for the remaining business interruption damages.  (Doc. 80, Ex. 3A).  Plaintiff contends that Constantini and Gross mutually agreed to appoint Guider to serve as umpire on *all* of plaintiff's claims in July, 2012.  Defendant, on the other hand, contends that Guider was selected as the umpire only as to the property damage claim, and not as to the business interruption loss claim.

According to Guider's CV, he has 46 years of insurance experience, beginning as a claims adjuster, and he is now working as executive general adjuster with Chenard & Osborn in Grand Rapids. He has worked as an appraiser on disputed property claims 298 times, and has been appointed as an umpire on 102 occasions.

### Procedure for Selecting Umpire

According to Michigan law, in an appraisal, each party selects its own appraiser, and it is the two appraisers who then select the umpire, not the parties. Where they cannot agree, the court will appoint the umpire. Mich. Comp. Laws § 500.2833(1)(m). The statute provides:

> That if the insured and insurer fail to agree on the actual cash value or amount of the loss, either party may make a written demand that the amount of the loss or the actual cash value be set by appraisal. If either makes a written demand for appraisal, each party shall select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days after receipt of the written demand. The 2 appraisers shall then select a competent, impartial umpire. If the 2 appraisers are unable to agree upon an umpire within 15 days, the insured or insurer may ask a judge of the circuit court for the county in which the loss occurred or in which the property is located to select an umpire.

*Id.* The insurance policy includes a similar provision:

> **29.  Appraisal**
>
> If the Insured and the Company fail to agree on the amount of the loss, each upon written demand either of the Insured or of the Company made within sixty (60) days after receipt of proof of loss by the Company, shall select a competent and disinterested appraiser. The appraisers shall then select a competent and disinterested umpire. If they should fail for fifteen (15) days to agree upon such umpire, then upon the request of the Insured or of the Company such an umpire shall be selected by a judge of a court of record in the county and state in which the appraisal is pending.

(Doc. 1, Ex. A at ¶ 29).

## Analysis

**1.    The Parties' Appraisers Agreed to have Guider Adjudicate the Business Interruption Claim**

The appraisers, Gross and Constantini, previously agreed to have Guider act as umpire over all claims, which necessarily includes the business interruption loss claim. It is undisputed that Guider served as umpire on three successive and separate awards so far.  In addition to deciding the building loss claim, he also decided the emergency water mitigation; and the pack-out, testing, cleaning, storage and return of appliances, electronics and general contents awards.  On June 29, 2012, Gross wrote to Constantini about the need to appoint an umpire to preside over all disputed losses. Specifically, Gross wrote, "I think we should try to agree on an umpire at this time so we have someone on board and ready to participate *on any areas of disagreement that may arise.*"  (Doc. 75, Ex. A2) (emphasis added).  Plaintiff has submitted a copy of Constantini's e-mail to Gross on July 13, 2012, in which Constantini stated that "I had a phone interview with Dick Guider and find him acceptable as an umpire."  (Doc. 75, Ex. A5).  No evidence in the record suggests that the umpire was limited to adjudicating only the property damage claim, and in fact, he has already decided several other claims.

Defendant's arguments to the contrary lack merit.  In support of its position that the appraisers failed to agree that the umpire would decide the business interruption loss, defendant has submitted a copy of plaintiff's request for an appraisal dated May 10, 2012, which states, in relevant part, "[a]t this time we are not requesting appraisal on the business interruption/extra expense portion of the claim except as to how it

relates to the period of reconstruction." (Doc. 80, Ex. 1). Plaintiff explains that its initial request for appraisal qualified the scope of the business interruption claim because defendant was paying those damages at that time. Plaintiff emphasizes its current business interruption claim is squarely within the reserved determination of the period of reconstruction; moreover, when the appraisers selected Guider in July, 2012, he was to act as umpire over all losses. Plaintiff further responds that because the court's April 23, 2014 order remanded the issue of contents storage to appraisal, and there is no dispute that Guider was previously appointed to adjudicate that claim, appointing a new umpire for the business interruption loss claim now will require that two umpires resolve the remaining claims.

Defendant has cited no precedent for the proposition that multiple umpires may preside over an appraisal on a piecemeal basis, with different umpires appointed to adjudicate different loss claims even though all of the losses arise out of the same incident. Because umpires act as quasi-judges, that would be akin to splitting a civil lawsuit arising out of a tort claim to one judge to decide pain and suffering damages, to another to decide lost wages, and to another to decide the question of attorney fees. This is not done in the judicial system, nor should it be done in the appraisal process. To appoint a new umpire now would significantly delay appraisal of the remaining claims. Although some portion of the initial appraisal proceeding was transcribed, reading the partial transcript will not substitute for listening to the live testimony of ten experts and conducting an in person examination of the building prior to repairs. There is no possibility that a new umpire could physically examine the apartment building as it existed prior to repairs. For this reason alone, Guider is in a better position than any

newly appointed umpire to determine the business interruption loss. Although the experts could be recalled to testify again, using the same umpire will avoid unnecessarily elongating the proceedings either because the witnesses will not be required to testify again, or because their testimony could be significantly shortened.

Guider is in the best position to preside over the business interruption loss appraisal based on his prior experience in the appraisal of this matter. He is intimately familiar with the facts and circumstances surrounding the damage to the apartment building and his adjudication of the building damage claim will significantly overlap with the analysis to be done to determine the business interruption loss. He will need to determine the period of restoration which necessarily depends on the severity of the building damage which was clearly within the scope of his prior analysis.

In sum, the record is clear that Constantini and Gross selected Guider to act as umpire to preside over all claims to be appraised. The court having now determined that the business interruption loss, extra expense, and contents storage claim, are subject to appraisal, Guider is to continue as the umpire over those claims. Continuing with Guider promises to yield the most expeditious and efficient adjudication of the remaining matters to be appraised. Given the strong policy considerations in favor of continuing with the same appraiser, even if the court were to find that the parties' appraisers had not agreed to Guider's appointment and that it was necessary for the court to appoint an umpire for them; in its discretion, this court would appoint Guider.

 2.    **Defendant's Motion to Declare Guider Unfit**

In deciding whether to order Guider to continue as umpire, the court next considers defendant's motion that he be disqualified on the grounds that he is biased.

The umpire "may not favor either party; he must serve only equity, fairness, and justice." *Auto-Owners Inc. v. Allied Adjusters & Appraisers, Inc.*, 238 Mich. App. 394, 401 (1999). In an appraisal, the party seeking to remove an umpire has the burden of proof and must show actual partiality or bias. *Emmons v. Lake States Ins. Co.*, 193 Mich. App. 460, 466 (1992); *Roehrig v. State Auto. Mut. Ins. Co.*, No. 252742, 2005 WL 1579518, *2 (Mich. App. July 5, 2005). Defendant has not shown that Guider was biased as its claims of impropriety are refuted by Guider's and plaintiff's counsel's affidavits.

Defendant argues this court should appoint a neutral umpire and should declare that Guider is not "disinterested"[1] because he (1) allegedly drove to the previous appraisal with plaintiff's appraiser Gross; (2) allegedly engaged in ex parte communications with Gross; (3) is not disinterested because plaintiff's counsel frequently uses him in other litigation; and (4) plaintiff has used information supplied by Guider in support of its claims and defenses in this case. Plaintiff refutes each point by way of sworn affidavits.

In his affidavit, Guider states that he (1) has never driven in a car with Gross (Doc. 75, Ex. C at ¶ 5);[2] (2) has never had any ex parte communications with Gross or

---

[1]As plaintiffs note in their brief, the proper standard under Michigan law is not "disinterested" but "impartial." Mich. Comp. Laws § 500.2833(1)(m). The prior standard of "disinterested" was repealed in 1990. *White v. State Farm Fire & Cas. Co.*, 293 Mich. App. 419, 423-25 (2011). The policy, however, requires that the umpire be "competent and disinterested." The definition of "impartial" is "[f]avoring neither, disinterested; treating all alike; unbiased; equitable, fair, and just." *Id.* (*quoting Auto-Owners*, 238 Mich. App. at 400-401). As a matter of semantics, it appears there is no real difference between the terms "impartial" and "disinterested."

[2]Plaintiff also points out that it is unlikely that Guider, whose office is in Grand Rapids, would drive to Detroit with Gross, whose office is in Southfield.

plaintiff's counsel; *Id.* at ¶ 8, 10; and (3) plaintiff's counsel has never appointed him as an umpire, but he has been appointed to serve as umpire by agreement of the two appraisers in a small number of claims where policyholders were represented by plaintiff's counsel. *Id.* at ¶ 9. Plaintiff's counsel Michael Fabian also submitted an affidavit stating that he has never had any ex parte communications with Guider, and did not use any information supplied by Guider in this litigation other than his CV which he obtained from Gross. (Doc. 75, Ex. D at ¶ 6-7). In its reply brief, defendant attached Constantini's affidavit stating that he overheard Gross and Guider discussing driving to the appraisal together, felt that Guider was not disinterested, and objected to the property damage award because it did not set forth a break down of the losses. (Doc. 80, Ex. 2 at ¶¶ 3-6). Even if true, Constantini's "feeling" that Guider was biased, or his complaint about the manner in which Guider set forth his damages award, does not lead to the conclusion that Guider was partial to the plaintiff. More problematic is Constantini's claim that Gross and Guider "discussed" driving together, but Guider's affidavit that they did not do so stands unrefuted.

     At oral argument, defendant argued that Guider must be disqualified because he submitted an affidavit in this case. Plaintiff responds persuasively that Guider only filed an affidavit here in response to defendant's personal attacks on his professional integrity, credibility, and reputation. It would be inappropriate for this court to disqualify Guider solely because he responded to defendants' allegations of ethical misconduct. Such a result is inequitable because it would require the court to disqualify Guider either for failing to respond to claims of misconduct, or conversely, because he in fact defended himself. Either way, Guider would be disqualified. The court must reject

8

defendant's argument, lest all umpires face disqualification whenever mere accusations of impropriety are made, whether grounded in fact or not. Such a result is untenable.

Defendant also argues that Guider acted improperly as the umpire in the building damage appraisal as he did not itemize the amount of the loss. Defendant has not shown that the policy required such an itemization. *See Arkin Distrib. Co. v. American Ins. Co.*, 85 Mich. App. 359, 366 (1978) (no further itemization of appraisal award needed where not required under the policy). In his affidavit, Guider states that neither the policy nor Michigan law requires an itemization beyond stating the replacement cost and actual cash value, and that in his experience in scores of appraisals, he has never itemized damages unless both appraisers agree to do so, which did not happen here. (Doc. 75, Ex. C at ¶ 6). In sum, defendant has failed to show that Guider is biased or incompetent, and defendant's motion to disqualify him is denied.

### 3. Defendant's Motion to Disqualify Plaintiff's Appraiser Ethan Gross

In its motion, defendant also moves to disqualify plaintiff's Appraiser Ethan Gross; however, defense counsel did not address the issue at oral argument. Thus, the court decides the issue based solely on the submissions. Defendant moves to dismiss Gross on the grounds that he (1) allegedly drove to the appraisal hearing with Guider; (2) allegedly engaged in ex parte communications with Guider; (3) submitted an affidavit in support of plaintiff's claims and defenses in this litigation; and (4) allegedly submitted an intentionally inflated replacement cost claim. Plaintiff refutes the above allegations by affidavit. In his affidavit, Gross states that he has never driven in a vehicle with Guider and has never engaged in any ex parte communications with him. (Doc. 75, Ex. A at ¶¶ 15-16.). He further states that he submitted an affidavit in this lawsuit only to

9

refute allegations of fraud made by defendant that he knowingly misrepresented estimates he prepared during the appraisal process.  *Id.* at ¶ 17. Gross's affidavit states that having served as an appraiser or umpire in hundreds of claims, appraisal awards routinely set forth replacement cost and actual cash value figures without further itemization.  (Doc. 75, Ex. A at ¶ 14).  Moreover, the court has already rejected defendant's allegations of fraud when it denied defendant's motion to add a fraud counterclaim or affirmative defense.  Defendant has failed to show that Gross is not "disinterested" as required under the policy, or that he is not "competent" or "independent" as required under Mich. Comp. Laws § 500.2833(1)(m).  Accordingly, defendant's motion to disqualify Gross is denied.

## Conclusion

For the reasons stated above, defendant's motion (Doc. 72) to disqualify Guider is DENIED.  Because the appraisers selected Guider to act as umpire over all loss claims, defendant's motion that this court name a new umpire is DENIED.   IT IS FURTHER ORDERED that defendant's motion to disqualify Gross is DENIED.

**IT IS SO ORDERED.**

Dated:  July 21, 2014

                                                s/George Caram Steeh  
                                                GEORGE CARAM STEEH  
                                                UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on July 21, 2014, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk